878 So.2d 1138 (2003)
William D. STIFF
v.
ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD et al.
1010169.
Supreme Court of Alabama.
May 2, 2003.
Rehearing Denied October 3, 2003.
*1139 Jim L. DeBardelaben of DeBardelaben, Norwood & Westry, P.C., Montgomery, for appellant.
Randy A. Dempsey, F. Wade Steed, and Jonathan D. Green of Dempsey, Steed & Stewart, P.C., Birmingham, for appellees.
SEE, Justice.
The State of Alabama levies excise taxes on wine under the Alabama Table Wine Act and formerly under the Alabama Native Farm Winery Act. William Stiff appeals from the Montgomery Circuit Court's judgment holding that he lacks standing to challenge the Alabama excise taxes on wine under the Commerce Clause of the Constitution of the United States[1] *1140 and from the circuit court's summary judgment in favor of the Alabama Alcoholic Beverage Control Board ("ABC Board") on his claim that the ABC Board violated the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975, when it failed to establish a procedure for the markup of table wine.[2] We reverse and remand.
In 1979, the Legislature passed the "Native Farm Winery Act," § 28-6-1 et seq., Ala.Code 1975.[3] The Native Farm Winery Act levied an excise tax of $.05 per gallon on all native farm wine sold in Alabama or dispensed as free samples at a native farm winery. § 28-6-4(b), Ala.Code 1975. In 1980, the Legislature passed the "Alabama Table Wine Act," § 28-7-1 et seq., Ala.Code 1975. The Table Wine Act levied an excise tax of $.45 per liter on all table wine "sold to [a] wholesale licensee or [the ABC] board, to be collected from the purchaser by the board or by a licensed retailer." § 28-7-16, Ala.Code 1975.[4] The Table Wine Act exempted native farm wine from the table wine excise tax.[5] § 28-7-24, Ala.Code 1975.
William Stiff is an Alabama domiciliary and a consumer of table wine. On September 27, 1999, Stiff sued the ABC Board alleging that the ABC Board had violated the Commerce Clause of the Constitution of the United States, Art. I, § 8, cl. 3, by imposing and collecting an excise tax of $.45 per liter on all table wine imported into Alabama, but imposing and collecting an excise tax of only $.05 per gallon on native farm wine produced and sold in Alabama.
Stiff also alleged that the ABC Board had violated § 41-22-5, Ala.Code 1975, a part of the Alabama Administrative Procedure Act, by failing to establish a procedure by which the price of table wine is marked up and by failing to publish such a procedure in the Alabama Administrative *1141 Monthly so that "interested persons" would have an opportunity to submit to the ABC Board comments or proposals about the procedure.
The ABC Board moved for a summary judgment; it argued that Stiff lacked standing to bring the Commerce Clause challenge and that the ABC Board had not violated the Alabama Administrative Procedure Act. The trial court ordered mediation, which was unsuccessful, and the ABC Board again moved for a summary judgment. On September 14, 2001, the trial court entered a judgment in favor of the ABC Board; it held (1) that Stiff does not have standing to challenge the excise-tax scheme under the Commerce Clause, and (2) that the ABC Board did not violate the Alabama Administrative Procedure Act when it failed to establish and publish notice of its markup procedure for table wine. Stiff appeals, arguing that the trial court erred on both grounds when it entered the summary judgment.
"`The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).'"
Gonzalez, LLC v. DiVincenti, 844 So.2d 1196, 1200-01 (Ala.2002)(quoting Brewer v. Woodall, 608 So.2d 370, 372 (Ala.1992)). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Standing
Stiff argues that he has standing to challenge the manner in which Alabama levied its excise taxes on wine under the Table Wine Act and the Native Farm Winery Act. To establish that he has standing to bring a challenge under the Commerce Clause, Stiff must demonstrate the existence of: (1) an actual concrete and particularized "injury in fact"  "an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Stiff also must demonstrate that "he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth, 422 U.S. at 518, 95 S.Ct. 2197. At an irreducible minimum, Stiff must "`show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct'" of the ABC Board. Bender v. Williamsport Area School Dist., 475 U.S. 534, 542, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)(quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)).[6]
*1142 Stiff argues that he has standing to challenge the manner in which Alabama levied its tax on table wine because, he says, he was compelled under the tax scheme to pay an unconstitutional tax.[7] The trial court found that Stiff lacks standing because the excise tax on table wine "is assessed on and collected from the wholesaler," not from Stiff, who is a retail customer. The trial court concluded that Stiff does "not seek to do business across state lines, nor [does he or could he] seek to directly purchase the goods subject to the tax." The ABC Board argues on appeal that Stiff is asserting "generalized grievances," that Stiff is not entitled to assert claims seeking lower wine prices, and that he is not asserting claims that would protect his own rights. (ABC Board's brief at 4.) The ABC Board also argues that Stiff lacks standing because, it argues, he is not a representative of the wine industry and has not demonstrated that he is entitled to protect the interests of the wine industry.
Consumers who suffer an injury from "regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III." General Motors Corp. v. Tracy, 519 U.S. 278, 286, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997).[8] In Tracy, General Motors argued that Ohio's scheme for taxing natural gas violated the Commerce Clause because Ohio taxed gas purchased directly by consumers from out-of-state providers at a higher rate than it taxed gas purchased by consumers from in-state local gas distribution companies. The Supreme Court of Ohio held that General Motors was "without standing to raise this Commerce Clause challenge because the company is not one of the sellers said to suffer discrimination under the challenged tax laws." Tracy, 519 U.S. at 286, 117 S.Ct. 811. The Supreme Court of the United States reversed the judgment of the Ohio Supreme Court and held that General Motors, as a customer burdened by the tax, had standing to bring a Commerce Clause challenge:
"But cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured, as in this case where the customer is liable for payment of the tax and as a result presumably pays more for the gas it gets from out-of-state producers and marketers."
*1143 Tracy, 519 U.S. at 286, 117 S.Ct. 811. The Supreme Court in Tracy analogized the case to Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), and stated that General Motors had standing for the same reason that in-state liquor wholesalers in Bacchus had standing to bring a Commerce Clause challenge to a Hawaii tax scheme exempting liquor produced in Hawaii from liquor taxes.
"Although the wholesalers were not among the class of out-of-state liquor producers allegedly burdened by Hawaii's law, we reasoned that the wholesalers suffered economic injury both because they were directly liable for the tax and because the tax raised the price of their imported goods relative to the exempted in-state beverages."
Tracy, 519 U.S. at 287, 117 S.Ct. 811.
Stiff argues that as a consumer of imported table wine he stands in the same position as did General Motors in Tracy and the in-state liquor wholesalers in Bacchus. We agree.
In the case before us, the trial court found that Stiff could not stand in the same position as did General Motors in Tracy, because whereas General Motors had purchased natural gas directly from out-of-state suppliers, under Alabama's three-tiered system of alcoholic-beverage distribution Stiff is forbidden from purchasing wine directly from out-of-state producers. Wine wholesalers purchase wine from out-of-state suppliers and distribute the wine to retailers. Consumers like Stiff may purchase wine only from licensed retail outlets, not directly from wholesalers or from out-of-state producers. See § 28-7-4, Ala.Code 1975.
The fact that Stiff may not purchase wine directly from out-of-state producers is, however, immaterial, because the trial court erroneously concluded that "the [discriminatory] tax is assessed on and collected from the wholesaler."[9] The trial court ignored the plain language of the excise-tax statute, which requires consumers of table wine  such as Stiff  to pay the excise tax. At the time the table wine excise tax at issue here was levied, § 28-7-16(a) and (b), Ala.Code 1975, read, in pertinent part:
"(a) Levy.  There is hereby levied in addition to the license taxes provided for by this chapter and municipal and county license taxes and in addition to any marked-up price made by the board on wine sold by the board a privilege or excise tax measured by and graduated in accordance with the volume of sales of table wine and shall be an amount equal to $.45 per liter of table wine sold to the wholesale licensee or board, to be collected from the purchaser by the board or by a licensed retailer.
"(b) Collection.  The tax levied by subsection (a) of this section shall be added to the sales price of all table wine sold and shall be collected from the purchasers. The tax shall be collected in the first instance from the wholesaler where table wine is sold or handled by wholesale licensees, and by the board from whomever makes sales when table wine is sold by the board. It shall be unlawful for any person who is required to pay the tax in the first instance to fail or refuse to add to the sales price and collect from purchaser the required amount of tax, it being the intent and *1144 purpose of this provision that the tax levied is in fact a levy on the consumer. The person who pays the tax in the first instance is acting as an agent of the state for the collection and payment of the tax and as such may not collect a tax on table wine for any other level of government."
(Emphasis added.) The statute requires retailers to collect the tax from the ultimate purchasers; therefore, the retailer acts as an instrumentality for collecting the tax from the consumer and remitting it to the State. The statute requires wholesalers and retailers to add the tax to the price of table wine, thereby expressly forbidding wholesalers and retailers from paying the tax themselves. The plain language of the statute indicates that the table wine excise tax is levied on the consumer.
In Tracy, General Motors had standing because it paid the tax: "customers of that class [sellers said to suffer discrimination under the challenged tax laws] may also be injured, as in this case, where the customer is liable for payment of the tax...." 519 U.S. at 286, 117 S.Ct. 811. Similarly, the Supreme Court stated that the wholesalers in Bacchus had standing "because they were directly liable for the tax." Tracy, 519 U.S. at 286, 117 S.Ct. 811.[10] In this case, we hold that Stiff has standing because the Table Wine Act requires consumers of table wine, not wholesalers or retailers, to pay the tax. We hold that Stiff has standing to challenge the table wine excise tax.

The Table Wine Markup Procedure
Stiff also argues that the ABC Board has failed to publish its markup procedure for table wine in the Alabama Administrative Monthly, as required by § 41-22-5, Ala.Code 1975, a part of the Alabama Administrative Procedure Act.[11] Stiff argues *1145 that the ABC Board's failure to publish a "rule" for its markup procedure has denied him and other "interested persons" the opportunity to submit their proposals to the ABC Board. See § 41-22-5, Ala.Code 1975.
Section 41-22-3(9), Ala.Code 1975, in pertinent part, defines a "rule" as a "regulation" that "implements ... or prescribes law or policy." Although we are not suggesting that a particular price is a "rule," the procedure by which the price of table wine is marked up and set is a rule as defined by § 41-22-3(9), Ala.Code 1975, because it implements or prescribes a pricing policy.[12]
The ABC Board argues that it is empowered to regulate the sale of alcohol. See Ex parte Alabama Alcoholic Beverage Control Bd., 683 So.2d 952, 954; § 28-3-43(a)(1), Ala.Code 1975. The trial court found that "[u]nder Alabama law, the ABC Board has the intrinsic power to buy, manufacture, sell and price alcoholic beverages." We agree. The ABC Board has broad power to regulate the sale and manufacture of alcoholic beverages and to price such beverages for sale in its stores at whatever price it may set. See Bartlett v. Alabama Alcoholic Beverage Control Bd., 654 So.2d 1139 (Ala.1993)(" `regulation of liquor traffic is subject to the intrinsic police power of the state, a broad and *1146 plenary power'")(quoting Ott v. Everett, 420 So.2d 258, 260 (Ala.1982)).
Stiff also agrees that the ABC Board has these powers, but he argues that the ABC Board must nonetheless comply with the Alabama Administrative Procedure Act when it implements a pricing policy. In Brunson Construction & Environmental Services, Inc. v. City of Prichard, 664 So.2d 885, 893 (Ala.1995), this Court stated:
"The provisions of the Administrative Procedure Act impose upon administrative agencies the duty  preliminary to the `adoption, amendment, or repeal,' § 41-22-5(a)(1), of `rules of practice,' § 41-22-4(a)(2)  to publish the `terms or substance' of such rules, § 41-22-5(a)(1), and, among other things, to `[a]fford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing.' Section 41-22-5(a)(2). Noncompliance with these provisions voids every `agency rule, order, or decision' taken in any case in which the provisions are applicable. Section 41-22-4(b). Section 41-22-3(9) defines a `rule' as `[e]ach agency regulation, standard or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency.'"
(Emphasis omitted.)
We cannot find any evidence in the record indicating that the ABC Board has published its procedure for marking up the price of table wine in the Alabama Administrative Monthly, nor does the record indicate that interested persons were allowed to submit comments or proposals regarding the markup procedures for table wine. Although the trial court correctly found that it has no authority to "strike down the markup on table wine and provide refunds based on an alleged failure to comply with the Administrative Procedure Act,"[13] the trial court erred by not requiring the ABC Board to comply with the provisions of the Administrative Procedure Act. The ABC Board has near plenary authority to price wine, but, because it is not exempt from compliance with the Administrative Procedure Act, the ABC Board may not sell wine to wholesale or retail customers without complying with the procedures set forth in that Act. Therefore, we reverse the trial court's order entering a summary judgment in favor of the ABC Board on Stiff's Alabama Administrative Procedure Act claim, and remand this cause for such proceedings as are necessary for the trial court to order the ABC Board, consistent with this opinion, to comply with the Administrative Procedure Act.
REVERSED AND REMANDED WITH DIRECTIONS.
MOORE, C.J., and HOUSTON,[14] LYONS, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
WOODALL and STUART, JJ., concur in part and dissent in part.
WOODALL, Justice (concurring in part and dissenting in part).
I concur fully in the majority opinion insofar as the Court holds that Stiff has *1147 standing to challenge the table wine excise tax. However, I respectfully dissent from the holding that the markup procedure by which the ABC Board sets the price of table wine is a "rule" as defined by § 41-22-3(9), Ala.Code 1975.
Section 41-22-3(9), in part, defines a "rule" as an "agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy." (Emphasis added.) Because the markup procedure in question implements or prescribes the pricing policy of only the ABC Board, I do not believe that it is "of general applicability," as that term is used in § 41-22-3(9). Instead, I believe that the markup procedure falls within one or more of the exceptions to the statutory definition of "rule." See § 41-22-3(9)a. ("[s]tatements concerning only the internal management of an agency and not affecting private rights or procedures available to the public"), and § 41-22-3(9)c.("intra-agency memoranda, directives, manuals, or other communications which do not substantially affect the legal rights of, or procedures available to, the public or any segment thereof").
The cases cited by the majority in note 12 do not support its holding. Indeed, both cases involve regulations generally applicable to entities other than the regulatory commission that promulgated the regulations.
STUART, J., concurs.
NOTES
[1] If Stiff ultimately succeeds in securing a judicial determination that the excise tax violates the Commerce Clause of the United States Constitution, that determination will directly reduce Stiff's tax burden. Thus, although Stiff, as a taxpayer, objects to the excise tax on table wine, this case is not a so-called "taxpayer-standing" case.

"[S]o-called taxpayer suits ... really are challenges to the spending power, not to the taxing power. Such taxpayers do not really object to the taxes levied but to the uses to which they apply. As Justice Harlan correctly explained in a dissent in another case, such a suit by a taxpayer challenging an expenditure:
"`cannot result in an adjudication either of the plaintiff's tax liability or of the propriety of any particular level of taxation. The relief available consists entirely of the vindication of rights held in common by all citizens.'
"Nor can it be said that such a taxpayer, if successful on the merits in declaring an expenditure unconstitutional, would have his taxation burden reduced, even minutely."
John E. Nowak & Ronald D. Rotunda, Constitutional Law § 2.12(f)(1), at 72 (4th ed. 1991)(quoting Flast v. Cohen, 392 U.S. 83, 118, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)(Harlan, J., dissenting)).
[2] In count 5 of his complaint Stiff asked for: (1) injunctive relief; (2) certification of a class; (3) a declaration stating that the ABC Board had no authority to mark up table wine; and (4) monetary damages.
[3] The act defined a "native farm winery" as a winery where the annual wine production did not exceed 100,000 gallons and where 75% of the berries, fruit, produce, or honey used to make the wine was grown or produced in Alabama by the winery. § 28-6-1(1), Ala.Code 1975. It defined "native farm wine" as wine produced on a native farm winery. § 28-6-1(2), Ala.Code 1975. The act stated: "The excise tax provided for in this section shall be in lieu of all other taxes imposed." § 28-6-4(b), Ala.Code 1975. The Native Farm Winery Act was repealed by the Legislature effective September 30, 2001. Act No. 2001-1114, Ala. Acts 2001 (4th Spec.Sess.).
[4] Section 28-7-16, Ala.Code 1975, was repealed and replaced with a new § 28-7-16 by Act No. 2001-1114, Ala. Acts 2001. Act No. 2001-1114 likewise imposed an excise tax of $.45 per liter on all table wine.
[5] The last sentence in § 28-7-24, Ala.Code 1975, states that "nothing herein contained shall be construed to repeal or as repealing Chapter 6 of this title [the Native Farm Winery Act]." We note that in 2001 the Native Farm Winery Act was repealed. See note 3.
[6] The United States Court of Appeals for the Third Circuit refers to this requirement as "prudential standing" and states the following test for assessing whether a plaintiff satisfies such standing:

"[Prudential limits] require that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based."
Oxford Assocs. v. Waste Sys. Auth. of Eastern Montgomery County, 271 F.3d 140, 145-46 (3d Cir.2001) (alterations and emphasis in original). See also Warth, 422 U.S. at 499-500, 95 S.Ct. 2197 (stating that the assertion of a "generalized grievance" does not confer standing and that a plaintiff must assert his own interests so that the court will not be called on to decide abstract questions of wide public significance but only actual cases or controversies).
[7] The actual constitutionality of the tax is not at issue in this appeal, only whether Stiff has standing to challenge it. Stiff relies on Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), as support for the proposition that a tax scheme that favors locally produced wine violates the Commerce Clause.
[8] In Tracy the Supreme Court of the United States stated: "The negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby `imped[es] free private trade in the national marketplace.'" 519 U.S. at 287, 117 S.Ct. 811 (alterations in original; citations omitted).
[9] By the trial court's logic, a person's income tax assessed on wages is actually paid by the person's employer and not the employee because the employer collects the tax and remits it to the State, and because the employer would be subject to a penalty for a failure to properly withhold and remit the tax in the first instance. Thus, by this reasoning, a taxpayer would not have standing to challenge an illegal income tax.
[10] The Hawaiian Legislature drafted the excise-tax statute being reviewed in Bacchus so that the incidence of the excise tax would fall on the wholesaler:

"HRS § 244-4, in pertinent part, read as follows when the taxes in question were assessed:
"`Every person who sells or uses any liquor not taxable under this chapter in respect of the transaction by which such person or his vendor acquired such liquor, shall pay an excise tax which is hereby imposed, equal to twenty per cent of the wholesale price of the liquor so sold or used; provided, that the tax shall be paid only once upon the same liquor; provided, further, that the tax shall not apply to:
"`....
"`(6) Okolehao manufactured in the State for the period May 17, 1971 to June 30, 1981; or
"`(7) Any fruit wine manufactured in the State from products grown in the State for the period May 17, 1976 to June 30, 1981.'"
In re Bacchus Imports, Ltd., 65 Haw. 566, 569 n. 1, 656 P.2d 724, 726 n. 1 (1982).
[11] Section 41-22-5, Ala.Code 1975, provides, in pertinent part:

"(a) Prior to the adoption, amendment, or repeal of any rule, the agency shall:
"(1) Give at least 35 days' notice of its intended action. Date of publication in the Alabama Administrative Monthly shall constitute the date of notice. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, shall specify a notice period ending not less than 35 days or more than 90 days from the date of the notice, during which period interested persons may present their views thereon, and shall specify the place where, and the manner in which interested persons may present their views thereon. The notice shall be given to the chairman of the legislative committee, as provided in Section 41-22-23, and mailed to all persons who pay the cost of such mailing and who have made timely request of the agency for advance notice of its rulemaking proceedings and shall be published, prior to any action thereon, in the Alabama Administrative Monthly. A complete copy of the proposed rule shall be filed with the secretary of the agency and the Legislative Reference Service.
"(2) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing. The agency shall consider fully all written and oral submissions respecting the proposed rule. Upon adoption of a rule, the agency, if conflicting views are submitted on the proposed rule, shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling any considerations urged against its adoption."
[12] See Cumberland Farms Northern, Inc. v. Maine Milk Comm'n, 428 A.2d 869, 873 (Me.1981)("An order setting minimum prices for the sale of milk is, quite precisely, a `rule' within the meaning of 5 M.R.S.A. § 8002(9)(A): it is a `regulation... that is or is intended to be judicially enforceable and implements ... or makes specific the law administered by the agency....'"). Maine's Administrative Procedure Act, like Alabama's, is drawn from the Revised Model State Administrative Procedure Act (1961). Maine's statute states, in pertinent part:

"`Rule' means the whole or any part of every regulation, standard, code, statement of policy, or other agency statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency."
Me. Rev. Stat. Ann. tit. 5, § 8002.9.A. Section 41-22-3(9), Ala.Code 1975, states, in pertinent part:
"RULE. Each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule or by federal statute or by federal rule or regulation...."
See also Kneeland Liquor, Inc. v. Alcoholic Beverages Control Comm'n, 345 Mass. 228, 233-34, 186 N.E.2d 593, 596-97 (1962)(holding under its statute that the ABC Commission's setting of minimum prices "is a regulation and does fall within" the State Administrative Procedure Act because "[t]he establishment of retail prices for customers of retail stores is an exercise of the police power in order to promote temperance, to stabilize the business, to avoid price wars, to instill observance of the law, and to protect the public.... The approval [of prices] constituted a `requirement of general application and future effect adopted by an agency to implement or interpret the law enforced or administered by it.'").
[13] The trial court concluded that the Administrative Procedure Act did not authorize it to strike down the ABC Board's wine-pricing scheme because the Administrative Procedure Act "is not meant to alter the substantive rights of any person or agency." § 41-22-2(c), Ala.Code 1975.
[14] Justice Houston did not attend oral argument; however, on September 18, 2002, he watched the videotape of the September 10, 2002, oral argument.