Kathy Sawyer, the commissioner of the Alabama Department of Mental Health and Mental Retardation, filed this petition for a writ of mandamus directing Judge Charles Price to grant her motion for a summary judgment, dismissing all state-law claims against her on the basis of State-agent immunity and the § 1983 claim against her on the basis of qualified immunity.
In September 1999, Edna Moseley, a resident at the Mary Starke Harper Geriatric Center at Bryce Hospital in Tuscaloosa, was injured when she was attacked by another patient. Joyce Marsh, in her capacity as Edna Moseley's guardian, sued the Alabama Department of Mental Health and Mental Retardation ("DMHMR") and Sawyer, commissioner of DMHMR, in her individual and official capacities, seeking damages, injunctive relief, and declaratory relief. Marsh alleged that Sawyer had negligently or intentionally violated the policies and procedures of DMHMR by refusing to provide Marsh with information regarding the assault; that Sawyer's actions violated Moseley's civil rights under 42 U.S.C. § 1983; that Sawyer had negligently failed to correct the pattern of abuse of patients by workers at Bryce Hospital; and that Sawyer had failed to perform numerous legal duties and ministerial acts to protect mental-health patients at Bryce Hospital. The trial court dismissed the claims against Sawyer in her official capacity, but it denied her motion for a summary judgment as to claims against her in her individual capacity. Sawyer filed this petition for a writ of mandamus directing Judge Price to dismiss the claims asserted against her in her individual capacity.
 Standard of Review "'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte Purvis, 689 So.2d 794 (Ala. 1996). . . .
 "'Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala. 1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397
(Ala. 1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486
(Ala. 1991); will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala. 1992); and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
 "'An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. *Page 436 Alpha Resins Corp., 577 So.2d 1278 (Ala. 1991), Boland v. Fort Rucker Nat'l Bank, 599 So.2d 595 (Ala. 1992), Rowe v. Isbell, 599 So.2d 35 (Ala. 1992).'
"Ex parte Rizk, 791 So.2d 911, 912-13 (Ala. 2000)."
Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002).
 Analysis
Sawyer petitions this Court for a writ of mandamus directing the trial court to enter a summary judgment in her favor on the claims against her in her individual capacity, on the ground that she is protected against civil liability by the doctrines of State-agent immunity and qualified immunity.
In Ex parte Cranman, 792 So.2d 392 (Ala. 2000), a plurality of this Court suggested a new test for determining when a State employee sued in his or her individual capacity is entitled to State-agent immunity:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
 "(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
". . . .
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405 (emphasis added). A majority of this Court adopted theCranman test in Ex parte Butts, 775 So.2d 173 (Ala. 2000).
Reviewing Sawyer's claim of immunity by the standards set forth inCranman, we conclude that Sawyer is protected under the doctrine of State-agent immunity because the actions for which Marsh is seeking to hold her liable occurred while she was acting as the commissioner of DMHMR. With regard to Marsh's contention that Sawyer's actions proximately caused Moseley's injuries, the evidence before us indicates that Sawyer did not work at Bryce Hospital, that she was not responsible for providing Moseley's family with information regarding the assault, and that she did not take any actions to delay the disclosure of the results of the investigation to the family. This evidence indicates that Sawyer's involvement in the incident was in her capacity as the commissioner of DMHMR, supervising the DMHMR personnel involved in the incident *Page 437 
and involved in the investigation of the incident (paragraph (2)(d) of the Cranman restatement).
In her answer, Marsh specifically states:
 "[I]t is [Marsh's] understanding that the thrust of the trial court's order [denying Sawyer's motion for a summary judgment on the claims asserted against her in her individual capacity] goes to Defendant Sawyer's conduct in failing to provide results of the investigation to Ms. Moseley's family and her conduct in delaying and attempting to thwart the civil litigation process. This was the understanding at the summary judgment hearing and [Marsh's] counsel did not pursue the claim that Ms. Sawyer was personally responsible for the injuries."
(Marsh's answer at p. 5.) In support of her claim that Sawyer "delay[ed] and attempt[ed] to thwart the civil litigation process," Marsh cites the failure of DMHMR's counsel to respond to a letter requesting the investigation report on the Moseley assault prepared by DMHMR's bureau of special investigation ("BSI"); the fact that Sawyer refused to disclose the BSI report after the trial court granted Marsh's Rule 27, Ala.R.Civ.P., petition for discovery before an action is filed; and the fact that Sawyer never informed the court that it was the policy of DMHMR to disclose the results of the investigation to the victim's family. Marsh concludes that those actions indicate that Sawyer "acted in concert [with DMHMR] to cover up a crime and to thwart and delay any trial proceedings in an attempt to deny an adequate remedy at law." (Marsh's answer at p. 8.)
At her deposition taken on August 20, 2002, Sawyer testified that she was unaware that Marsh's counsel had sent a letter to counsel for DMHMR requesting the BSI report on the Moseley assault. Marsh specifically asked Sawyer about her position on the release of the BSI report and the position she had taken in previous proceedings in this case concerning DMHMR's refusal to release the BSI report; Marsh asked: "Were any of your decisions based upon trying to delay this action for more than two years so that the statute of limitations would run?" Sawyer unequivocally stated "No." Marsh does not present any evidence indicating that Sawyer's actions in the events surrounding the Moseley assault were committed "willfully, maliciously, fraudulently, in bad faith, beyond . . . her authority, or under a mistaken interpretation of the law."792 So.2d at 405. She offers only speculation. Additionally, Marsh does not argue or present any evidence indicating that obtaining the information contained in the report by other means would create an undue hardship.
The evidence regarding Sawyer's involvement in DMHMR's alleged refusal to produce the BSI report indicates that Sawyer's decisions regarding the Moseley incident were made while she was "discharging duties imposed on" DMHMR and while she was acting in her capacity as commissioner of DMHMR (paragraph (3) of Cranman). Paragraph (3) provides State-agent immunity to a State employee when the employee is "discharging duties imposed on a department or agency by statute . . . insofar as the statute . . . prescribes the manner for performing the duties and the State agent performs the duties in that manner." Cranman, 792 So.2d at 405.
This Court in Ex parte Alabama Department of Mental Health MentalRetardation, 840 So.2d 863 (Ala. 2002), held that BSI investigation reports are protected from disclosure by § 12-21-3.1, Ala. *Page 438 
Code 1975.[1] Specifically, we stated in that case that "BSI investigative reports are `law enforcement investigative reports' within the meaning of § 12-21-3.1, and are therefore entitled to protection from civil subpoena, except upon a showing that the information contained in the report cannot be obtained from other sources without undue hardship."840 So.2d at 868. We further stated: "A showing of undue hardship requires more than a mere conclusory statement by the party seeking the information that he or she could not obtain the equivalent of the information in the reports sought by discovery without undue hardship."840 So.2d at 868. Indeed, the party must show that he has tried to obtain the information by other means but that the BSI report is the only way to obtain the information without undue hardship. Once a party has made that showing, the party may request an in camera hearing at which the trial court can inspect the report to determine the relevance of the information in the report and to determine "whether the information is such that it can be obtained from another source without undue hardship."840 So.2d at 869. See also Ex parte Alabama Dep't of Mental Health Mental Retardation, 840 So.2d 876 (Ala. 2002).
At the time Marsh sent the letter to DMHMR's counsel requesting the information, Marsh had not shown that she could not otherwise obtain the information without undue hardship. Additionally, at the hearing at which Sawyer's first deposition was ordered, the trial court stated that once Marsh sued DMHMR and Sawyer the information could be produced by discovery; therefore, it appears that Marsh had not shown "undue hardship" at that time. By refusing to disclose the BSI report, Sawyer was discharging her duties as commissioner subject to and in the manner prescribed by § 12-21-3.1, Ala. Code 1975.
To the extent that Marsh argues that Sawyer allegedly failed to establish policies that would have prevented the assault from occurring, the evidence indicates that there were policies in effect and in establishing those policies Sawyer had acted squarely within her authority as the commissioner. Thus, she is protected from civil liability in her personal capacity under paragraph (1) of Cranman. The commissioner is "authorized and directed to establish and promulgate reasonable rules, policies, orders and regulations providing details of carrying out [DMHMR's] duties and responsibilities." § 22-50-11(8), Ala. Code 1975. Additionally, the commissioner is "authorized to establish and promulgate reasonable minimum standards for the . . . operation of facilities, including reasonable minimum standards for the admission, diagnosis, care, treatment, [and] transfer of patients. . . ." § 22-50-11(11), Ala. Code 1975. Sawyer's testimony at her deposition indicates that all her decisions were made while she was formulating DMHMR policies in her official capacity as commissioner, which falls within paragraph (1) of Cranman.
Sawyer's deposition describes the statutory duties she was discharging and demonstrates that she was discharging these duties in her capacity as commissioner. Sawyer's deposition also establishes that she was acting in good faith, without malice, and under no mistake of law. No evidence before us indicates otherwise. Sawyer has established that she is entitled *Page 439 
to State-agent immunity as to the state-law causes of action.
Viewing the facts in a light most favorable to the nonmovant Marsh, as we must, see Ex parte Rizk, 791 So.2d 911 (Ala. 2000), we conclude that there is insufficient evidence indicating that Sawyer acted "willfully, maliciously, fraudulently, [or] in bad faith" in discharging her duties. Sawyer, as the commissioner of DMHMR, is protected by State-agent immunity in the discharge of the duty "to provide mental health services and mental retardation services for the people of Alabama." § 22-50-9, Ala. Code 1975. The trial court erred in denying Sawyer's motion for a summary judgment on the state-law claims against her in her individual capacity.
Additionally, Sawyer asks this Court to direct the trial court to enter a summary judgment in her favor with regard to the § 1983 claim on the ground that her actions were protected by qualified immunity. Marsh asserts that the BSI report regarding the incident was not being released when it was initially requested and Sawyer's refusal to discuss the matter during her deposition on December 12, 2001, violated her Sixth Amendment right to a trial by jury.
 "In deciding whether a public official . . . is entitled to qualified immunity in a § 1983 action, this Court employs the following two-step analysis:
 "'"1) The defendant public official must first prove that `he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'
 "'"2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions `violated clearly established constitutional law.'"'
 "[Roden v. Wright,] 646 So.2d [605] at 610 [(Ala. 1994)], quoting Rich v. Dollar, 841 F.2d 1558, 1563-64
(11th Cir. 1988). (Citations omitted.) In Point Properties[, Inc.] v. Anderson, [584 So.2d 1332] at 1338-39 [(Ala. 1991)], this Court, quoting Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1503
(11th Cir. 1990), explained that '"the relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred."' This Court went on to note that '"the qualified immunity defense provides ample protection to all except the plainly incompetent or those who knowingly violate the law."' 584 So.2d at 1339, quoting Stewart, supra."
Couch v. City of Sheffield, 708 So.2d 144, 155 (Ala. 1998). See alsoSmith v. Siegelman, 322 F.3d 1290 (11th Cir. 2003).
Viewing the evidence in the light most favorable to the nonmovant Marsh, as we are required to do under our summary- judgment standard of review, we conclude that Sawyer was engaged in a discretionary function. First, Sawyer was not responsible for providing the information to Marsh about the incident involving Moseley.[2] Moreover, when Sawyer refused to answer Marsh's questions during her deposition on December 12, 2001, she could have reasonably believed she was acting *Page 440 
lawfully. It is clear from the transcript of the hearing at which the deposition was ordered, as well as from the statements of Sawyer's counsel at the deposition, that Sawyer and DMHMR were confused as to the purpose and the subject matter of the deposition. The trial court's rulings at the hearing were at best ambiguous. The trial court ordered Marsh to convert her Rule 27, Ala.R.Civ.P., petition to a complaint against DMHMR and ordered Sawyer to permit the requested discovery of the incident. The trial court also granted Marsh's Rule 27 petition. At the time of the deposition, a written order had not been issued. When the trial court did issue its written order on January 23, 2002, Sawyer and DMHMR released the BSI report. Nothing before us indicates that Sawyer did not believe her actions at the time she was deposed were lawful in light of the law and the information she possessed at that time. Indeed, nothing before us establishes that at that time she was "plainly incompetent" or that she "knowingly violate[d] the law." Couch,708 So.2d at 155.
Our observation that Sawyer believed she was acting within the parameters of the law is supported by holdings of this Court issued after DMHMR's initial refusal to release the BSI report, which establish that BSI reports are protected from civil subpoena by § 12-21-3.1, Ala. Code 1975. See Ex parte Alabama Dep't of Mental Health MentalRetardation, 840 So.2d 863, and Ex parte Alabama Dep't of Mental Health Mental Retardation, 840 So.2d 876. Marsh's version of Sawyer's actions, standing alone, is not sufficient to create a fact question that takes Sawyer out from under the protection of the qualified-immunity doctrine.
 Conclusion
Sawyer has shown that she has a clear legal right to the relief sought. The trial court is directed to enter a summary judgment in favor of Sawyer on the claims against her in her individual capacity.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
[1] Section 12-21-3.1, Ala. Code 1975, provides that law-enforcement investigative reports are protected from civil subpoena unless the court finds upon proof of substantial evidence that the party seeking the report will suffer undue hardship and that the records are unavailable from other reasonable sources.
[2] It appears that general information about such incidents is provided to the victim's family or guardian by personnel at the facility where the incident occurred.