[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 306 
Moseley Grocery ("the store") appeals its three-year disqualification from participation in the Special Supplemental Nutrition Program for Women, Infants, and Children ("the WIC program"). The WIC program is designed to supplement the diets of certain low-income women, infants, and children ("participants"). The WIC program is funded through the United States Department of Agriculture under Section 17 of the Child Nutrition Act of 1966. The federal government has delegated the responsibility for administering the program to the individual states. In Alabama, the State Department of Public Health ("DPH") administers the WIC program. The WIC program is governed by 7 C.F.R. § 246.1 through .28 and § 22-12C-1, Ala. Code 1975, and rules promulgated thereunder by DPH.
Participants in the WIC program obtain nutritious foods from approved vendors by using a negotiable instrument provided to the participant by DPH. After exchanging the selected food items for the instrument, the vendor deposits the instrument in a bank as though it were a check. The bank then presents the instrument to DPH for payment.
In order to participate in the program, vendors enter into three-year contracts with DPH. DPH promulgates rules that explain the program and the terms and conditions of participation to the vendors. DPH provides the vendors with information regarding the penalties for violating the rules, and vendors receive training concerning compliance with the rules for redeeming the WIC instruments.
An instrument is valid for a given time and lists the foods for which it can be redeemed. Similar to the space on a common check in which the drafter writes the amount of the check, a WIC instrument has a "PAY EXACTLY" space. The vendor writes in the amount of the participant's purchase, which is the amount to be paid to the vendor's bank by DPH. The vendor contract requires that this space be filled in by the vendor in the participant's presence and before the participant signs the instrument. *Page 307 
Federal regulations require the states to monitor vendors in order to assure that the vendors are charging the states the appropriate amount for food obtained by participants. The federal regulations require the states to conduct compliance buys at a minimum of 5% of the vendors in the state each year.7 C.F.R. § 246.12(j)(4)(i). DPH defines compliance buys as being "covert investigations." Rule 420-10-2-.05(d)3., Ala. Admin. Code (DPH). These investigations involve a DPH agent, posing as a participant, entering a vendor's store with an instrument and selecting several items of food. The agent then transfers the instrument to the vendor and leaves the store with the purchased items. The agent documents the date and time of the buy, the types and quantities of items purchased, the amount charged, and a description of the cashier involved in the transaction.7 C.F.R. § 246.12(j)(6)(ii). Once the instrument is presented for payment to DPH from the vendor's bank, the agent compares the price listed on the instrument by the vendor with the listed price of the purchased items. If the amount listed on the instrument is more than the collective price of the purchased items, the vendor is determined to have overcharged DPH.
The applicable federal and state regulations provide that a pattern of overcharging for WIC foods is a violation that carries a mandatory three-year disqualification from the program.7 C.F.R. § 246.12(l)(1)(iii); Rule 420-10-2-.05(e), Ala. Admin. Code (DPH). At the time of the investigation on which this appeal is focused, Alabama defined a "pattern" of vendor violations as a vendor's "committing the same violation two (2) or more times during a compliance investigation which consist[s] of at least four (4) [compliance] buys." Rule 420-10-2-.05(f), Ala. Admin. Code (DPH).[1]
DPH regulations require DPH to notify a vendor in writing of pending charges. That notice, in addition to describing the proposed adverse action, the cause of the action, and the effective date of the action, must advise the vendor of its rights to a full administrative hearing and its opportunity to present the case, to confront and cross-examine witnesses, to be represented by counsel, and to review the evidence before the administrative hearing. Rule 420-10-2-.06(b)1.(I), Ala. Admin. Code (DPH). Further, the notice must advise a vendor that disqualification from the WIC program may result in a disqualification from the Food Stamp Program and that such a disqualification is not subject to administrative or judicial review. Rule 420-10-2-.06(b)1.(ii), Ala. Admin. Code (DPH).
The record reveals that DPH entered into a WIC contract with the store in 1980. Before the incident at issue in this appeal, the store had never been charged with a WIC program violation. The store's owners, Billy Lewis Sr., and Billy Lewis Jr. ("the owners"), completed all necessary training in the WIC program, as had some of the store's employees. This training consisted of the trainee watching a video and receiving a DPH handbook pertaining to the WIC program and procedures. In addition to the WIC procedures, the handbook contains the administrative and appellate procedures available to a vendor charged with violating WIC guidelines. The record reveals that the owners most recently received those materials in August 2003. *Page 308 
On October 1, 2003, Donald Bird,[2] a DPH investigator, conducted a routine monitoring visit at the store. During the monitoring visit, Bird examined two WIC instruments in the store's cash register. That examination led Bird to believe that the store was overcharging DPH for food sold through the WIC program. Bird requested permission from his supervisor to begin a compliance investigation; his supervisor granted the request.
The investigation consisted of four compliance buys. The store does not challenge the factual details of the four compliance buys; therefore, the four compliance buys are briefly summarized as follows. DPH conducted the first compliance buy on October 15, 2003. Debra Brooks, the DPH agent acting as a participant, entered the store with a marked instrument in order to purchase several items. During the first compliance buy, a black female was working as cashier. Brooks selected the items, approached the cash register, and transferred the instrument to the cashier. The cashier calculated the price of the items, wrote the total price in the "PAY EXACTLY" space on the instrument, and had Brooks initial next to the total amount.[3] Brooks left the store with the purchased items. Bird photographed the items, and Brooks and Bird filled out reports listing the purchased items, the price, a description of the cashier, and the time and date of the compliance buy. DPH found no violations during the first compliance buy.
Bird instructed Brooks to conduct the second compliance buy on October 22, 2003. Brooks entered the store with an instrument and selected the listed items. She took the items to the cash register and transferred the instrument to the cashier. During the second buy, a white male fitting the description of one of the owners[4] was serving as cashier. The cashier did not complete the "PAY EXACTLY" portion of the instrument in Brooks's presence, but he did have her sign the instrument. Brooks left the store with the items and completed the same procedure with Bird as she had after the first compliance buy. Based on the price tags affixed to the purchased items, DPH concluded that the total price for the WIC items Brooks obtained was $7.58. When the store's bank presented the instrument to DPH for payment, the "PAY EXACTLY" space of the instrument contained "$24.04," a difference of $16.46. DPH concluded that the second compliance buy resulted in an overcharge by the store.
Brooks conducted the third compliance buy on October 29, 2003. The same cashier as had been present during the second compliance buy served Brooks when she approached the cash register with the selected items. The cashier again failed to fill in the "PAY EXACTLY" space on the instrument in Brooks's presence, but the cashier did have Brooks sign the instrument. After leaving the store with the purchased items, Brooks and Bird determined the price of the purchased items, and upon the store's bank presenting the instrument to DPH, they concluded that *Page 309 
the store had overcharged DPH by $15.57 on the third compliance buy.
Brooks conducted the fourth compliance buy on November 6, 2003. A female cashier properly filled in the "PAY EXACTLY" space in Brooks's presence before having Brooks sign the instrument. DPH concluded that the store did not commit a violation during the fourth compliance buy.
Based on the store's overcharging DPH twice during an investigation that involved four compliance buys, DPH charged the store with committing a pattern of overcharging; that charge carried a mandatory three-year disqualification from the WIC program. DPH notified the store of the charges by certified letter dated December 5, 2003. The "charge letter" described each of the four compliance buys, including a detailed account of the second and third compliance buys. The December 5, 2003, charge letter also listed the pending charges against the store. That list of charges contained the phrase "Category VI, items 3 and/or 5" in its description of the charges. "Item 3" refers to a pattern of overcharging for WIC items and "item 5" refers to a pattern of charging DPH for items not sold to the participant. Both charges carry a mandatory three-year disqualification. Rule 420-10-2-.05(e)3. and 5., Ala. Admin. Code (DPH).
The December 5, 2003, charge letter also advised the store of its right to request a pre-disqualification conference, as well as its right to examine the evidence and request an informal pre-disqualification hearing. The charge letter described the pre-disqualification conference as "an informal, fact-finding meeting." The charge letter also informed the store that a disqualification from the WIC program would result in a disqualification from the Food Stamp Program and that disqualification from the Food Stamp Program would not be subject to an administrative hearing. The December 5, 2003, charge letter did not advise the store of its right to counsel or its right to cross-examine any adverse witnesses.
Shortly after receiving the December 5, 2003, charge letter, one of the owners met with Dennis Blair, DPH's Director of Vendor Management in the WIC program. According to Blair's testimony, Blair explained the appeals process to the owner and advised him of his right to an attorney. Blair testified that he told the owner "most [vendors facing pending charges] get lawyers, and I recommend it." The store subsequently obtained an attorney.
In early January 2004, the store requested the informal pre-disqualification conference described in the December 5, 2003, charge letter. The informal pre-disqualification conference occurred on January 28, 2004. At the conference, DPH made its evidentiary file available to the store and its attorney. The hearing officer later determined that, at the January 28, 2004, conference, the store's attorney had requested that the December 5, 2003, letter be changed or clarified with regard to "items 3 and/or 5."
DPH sent another charge letter to the store on February 5, 2004. This second charge letter was substantially similar to the first charge letter, except that DPH changed the phrase "items 3 and/or 5" to "and item 3." The second charge letter contained the following opening language, "as per [the store's] request . . . [DPH has] changed the wording in the following letter." On the same day, DPH also sent the store another letter stating that, based on the evidence presented at the informal conference, DPH had decided to uphold its decision to disqualify the store from the WIC program for three years.
On February 10, 2004, the store sent a letter to DPH requesting a more definite *Page 310 
and detailed statement relating to some of the pending charges. The store cited § 41-22-12(b)(4), Ala. Code 1975, as authority for making this request. Section 41-22-12(b)(4) provides that, if an agency has previously sent notice of pending charges but was unable to clearly state the details of the case, a party may request a more definite and detailed statement. DPH did not respond to that request.
DPH held a formal pre-disqualification hearing on March 31, 2004. At that hearing, DPH presented the testimony of Bird, Blair, and Brooks. The witnesses' testimony focused primarily on the four compliance buys and the events leading up to the investigation. The store's attorney vigorously cross-examined all three witnesses, but the store chose not to call any witnesses of its own.
From the outset of the administrative hearing, the store's attorney objected to the proceedings based on his claim that DPH had violated its own rules by not including notice of the store's right to counsel in the charge letters. The store's attorney also objected to the second charge letter being issued because DPH had no procedure for issuing a second charge letter, a fact to which Bird admitted. Therefore, the attorney alleged, all of the subsequent actions of DPH were void. The hearing officer considered those objections and disagreed.
On June 25, 2004, the hearing officer issued a final order regarding the charges against the store. The hearing officer found that the store did, in fact, overcharge DPH for WIC food on two occasions during an investigation that included four compliance buys. The hearing officer noted that two overcharges amounted to a "pattern" of overcharges and that the DPH had no choice, under Rule 420-10-2.05(f), Ala. Admin. Code (DPH), but to seek a three-year disqualification of the store from the WIC program. Because the hearing officer found that the store had committed a pattern of overcharges, he upheld the disqualification.
We note that, in his June 25, 2004, order upholding DPH's decision to disqualify the store from the WIC program, the hearing officer found that "the store had adequate notice" because, "the store had legal counsel at the pre-disqualification conference; reviewed evidence; had counsel at the formal hearing; cross-examined witnesses; and was able to view any evidence offered." With regard to the store's objection regarding the change in the charge letter, the hearing officer found that "there was no substantial change in the charge letter, only clarification by [DPH] after the informal conference." Further, the hearing officer noted that the opening language in the second charge letter suggested that the store's attorney actually requested the "clarification."
The store appealed to the Montgomery Circuit Court by filing a two-count complaint. Count one requested a review of the hearing officer's findings. Count two alleged that Bird and Wendy Blackmon, DPH's WIC Director, had, in their individual capacities, violated "the plaintiffs'" constitutional rights. Count two alleged both federal and state constitutional violations. After receiving briefs submitted by the parties and arguments by the parties' attorneys, the circuit court dismissed count two and, regarding count one, affirmed the hearing officer's decision. The store timely appealed to this court.
On appeal, the store argues that DPH did not comply with the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975 ("AAPA"), or DPH rules and, therefore, that the store's disqualification from the WIC program is due to be reversed. This court reviews the *Page 311 
trial court's ruling with no presumption of correctness, "since that court was in no better position to review the order of [the hearing officer] than we are." State Health Planning Res. Dev.Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614
(Ala.Civ.App. 1985). "Our standard of review of the agency decision is the same as that used by the circuit court: whether the administrative factfinder's decision `was illegal, capricious, or unsupported by the evidence.' Ala. Code 1975, § 38-7-9." Kid's Stuff Learning Ctr., Inc. v. State Dep't of HumanRes., 660 So.2d 613, 616 (Ala.Civ.App. 1995). See also Delavanv. Board of Dental Exam'rs, 620 So.2d 13, 18 (Ala.Civ.App. 1992). The AAPA, which governs judicial review of agency decisions, provides:
 "(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
 "(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
§ 41-22-20(k), Ala. Code 1975 (emphasis added).
On appeal, the store advances three arguments pertaining to this issue. First, the store argues that DPH failed to follow statutory guidelines when the hearing officer did not render a decision within 30 days of the hearing. Section 41-22-16(a)(1), Ala. Code 1975, provides that an agency's decision affecting a party's substantial rights "shall be rendered within 30 days" of the administrative hearing. DPH conducted the formal hearing on March 31, 2004, and the hearing officer rendered his opinion on June 25, 2004. Thus, the store argues, DPH violated §41-22-16(a)(1) and the disqualification is due to be set aside. Neither the caselaw nor the Commentary to § 41-22-16 supports this argument.
Our supreme court has held that § 41-22-16(a)(1) provides a mandatory time frame within which an agency must render its decision but that an agency's failure to comply with this statute is reversible error only if the delay impaired a substantial right of the individual involved. Ex parte Nixon,729 So.2d 277, 279-80 (Ala. 1998). DPH allowed the store to continue participating in the WIC program throughout the appellate process. Any delay could be seen as furthering the store's interest by lengthening the time of the store's participation in the WIC program, rather than as impairing the store's rights. Thus, the store has not demonstrated that a substantial *Page 312 
right was impaired by the hearing officer's failure to render a decision within 30 days of the hearing.
Moreover, the Commentary to § 41-22-16 does not support the store's argument. In the Commentary, it is noted that "the time requirement imposed in subsection (a) of this section is intended to insure that orders and decisions are speedily rendered, which is to the advantage of all parties to the contested case. Final orders must be rendered within 30 days unless all partiesconsent to delay." (Emphasis added.) At the administrative hearing, the hearing officer informed the parties that "I am going to need more than 30 days to render a [decision]. Do I get everybody's approval?" Because all parties consented on the record at the hearing, the store's argument fails with regard to this issue.
The store also argues that the disqualification is due to be set aside because DPH failed to notify the store of its right to counsel in the December 5, 2003, charge letter. The store argues that this failure caused DPH to act contrary to the requirements of Rule 420-10-2-.06(b)1.(I), Ala. Admin. Code (DPH). A court can reverse an agency action if substantial rights of a party have been prejudiced because the agency action is in violation of statutory provisions or in violation of any pertinent agency rules. § 41-22-20(k)(1) and (3), Ala. Code 1975.
The store is correct in noting that the charge letter did not notify the store of its right to counsel as required by Rule420-10-2-.06(b)1.(I), Ala. Admin. Code (DPH). However, the store has not demonstrated that that failure prejudiced any of its substantial rights; the store actually had legal representation throughout this process. A DPH official recommended to one of the owners that the store obtain legal representation soon after DPH sent the first charge letter but before the pre-disqualification conference was scheduled. As the hearing officer noted when considering this issue, the store was represented by counsel "at the pre-disqualification conference, reviewed evidence, had counsel at the formal hearing, cross-examined witnesses, and was able to view any exhibits offered." The store presented this issue to the hearing officer, and he found that, despite DPH's not precisely following Rule 420-10-2-.06(b)1.(I), Ala. Admin. Code (DPH), the store was not prejudiced. We agree. The store was vigorously represented throughout this process, and, therefore, it has failed to establish the prejudice required by §41-22-20(k) to warrant a reversal of the disqualification.
The store next contends that by sending the February 5, 2004, charge letter, DPH acted outside its authority and, therefore, that the disqualification should be set aside. Bird admitted that there was no procedure for DPH's issuance of a second charge letter, but the hearing officer determined that such a lack of procedure was not fatal to DPH's case. The hearing officer found that the second charge letter substantially reflected the first charge letter. The only change involved "items 3 and/or item 5" being changed to "and item 3." Both item three and item five are charges that carry a mandatory three-year disqualification. Rule 420-10-2-.05(e)3. and 5., Ala. Admin. Code (DPH). DPH did not add any charges against the store by sending the second charge letter; instead, a charge was actually removed. Thus, the store cannot establish that it was prejudiced by the change. As no prejudice occurred, the agency action is not due to be set aside under § 41-22-20(k).
Further, the record strongly suggests, and the hearing officer found, that DPH sent the second charge letter only in response *Page 313 
to a request by the store. The second letter begins with "as per [the store's] request, at the pre-disqualification conference . . . [DPH has] changed the wording in the following letter." In any event, the store has failed to show that it suffered any prejudice as a result of the change in the charge letter.
In support of all of these arguments, the store cites Stiff v.Alabama Alcoholic Beverage Control Board, 878 So.2d 1138 (Ala. 2003), and Brunson Construction Environmental Services, Inc.v. City of Prichard, 664 So.2d 885 (Ala. 1995). In both cases, our supreme court held the actions of a state agency to be void because the agency did not follow the provisions of the AAPA.Stiff, 878 So.2d at 1146; Brunson, 664 So.2d at 893. Neither case is applicable in the present case, however. In both Stiff
and Brunson, the plaintiffs demonstrated that a substantial right was prejudiced as a result of the agency's failure to follow the AAPA. Stiff, 878 So.2d at 1146; Brunson,664 So.2d at 888-89. As noted above, the store has failed to demonstrate that it suffered any prejudice as a result of DPH's actions, and, therefore, we affirm as to this issue.
The store also argues on appeal that Bird and Blackmon, in their individual capacities, violated the store's state and federal constitutional rights by causing DPH to act outside of its own rules and statutory guidelines. Specifically, the store contends that Bird and Blackmon violated the store's rights by causing DPH to issue the second charge letter on February 5, 2004. A detailed discussion of this contention is pretermitted by our conclusion that the store failed to prove that it suffered prejudice as a result of DPH's issuance of the second charge letter.
The store also contends that Bird and Blackmon, in their individual capacities, violated the store's rights by causing DPH to fail to respond to the store's request for a more definite statement. This contention cannot succeed. Section41-22-12(b)(4), Ala. Code 1975, provides that, if an agency has previously sent notice of pending charges but was unable to clearly state the details of the case, a party may request a more definite and detailed statement. Both charge letters met the requirements of § 41-22-12(b)(4), by describing the time and place of the compliance buys, detailing the pending charges, and outlining the authority under which those charges were brought. When the store requested a more definite statement, DPH was not required by § 41-22-12(b)(4) to respond to that request because DPH had already met the statute's requirements. The hearing officer addressed the issue of the store's receiving appropriate notice and the record supports his findings that the store did, in fact, receive adequate notice.
Even if this contention were meritorious, the state-law claims against Bird and Blackmon in their individual capacities would be barred, because Bird and Blackmon would be shielded by state-agent immunity. Our supreme court in Ex parte Butts,775 So.2d 173 (Ala. 2000), enunciated the state-agent immunity test as follows:
 "`A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"`(1) formulating plans, policies, or designs; or
 "`(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"`(a) making administrative adjudications;
"`(b) allocating resources; *Page 314 
"`(c) negotiating contracts;
 "`(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "`(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
 "`(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
 "`(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "`Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "`(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "`(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'"
Ex parte Butts, 775 So.2d 173, 177-78 (Ala. 2000) (quoting the test articulated by a plurality of our supreme court in Ex ParteCranman, 792 So.2d 392, 405 (Ala. 2000)). The store has presented no evidence indicating that the actions of Bird and Blackmon were executed in a manner outside of their "formulating plans, policies, or designs," or "exercising [their] judgment in the administration of a department or agency of government. . . ."Butts, 775 So.2d at 177. Further, the store has presented no evidence indicating that Bird and Blackmon acted "maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." Id. at 178. The state-law claims against Bird and Blackmon, in their individual capacities, fail.
To the extent that the store sued Bird and Blackmon in their individual capacities for alleged violations of the store's due-process and equal-protection rights under federal law, Bird and Blackmon are entitled to qualified immunity. Ex parteSawyer, 876 So.2d 433 (Ala. 2003). In order for a plaintiff to overcome the protections of a public official's qualified immunity, a public official must have been acting within his discretionary authority and, if so, the plaintiff must then demonstrate a lack of good faith on the part of the public official. Id. at 439. A plaintiff can establish this lack of good faith by demonstrating that the defendant public official's actions "`"`"violated clearly established constitutional law."'"'" Id. (quoting Couch v. City of Sheffield,708 So.2d 144, 155 (Ala. 1998) (quoting in turn other cases)). The record reflects that although Bird and Blackmon were, in fact, acting within their discretionary authority, the store has failed to demonstrate a lack of good faith on the part of Bird or Blackmon. We cannot say that the store has demonstrated error; therefore, we affirm.
AFFIRMED.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] We note that DPH amended Rule 420-10-2-.05(f) in September 2004, to decrease the number of required compliance buys to three.
[2] The record contains an alternative spelling of Mr. Bird's name. DPH refers to him as Donald Byrd, but his signature reflects that the correct spelling is "Bird."
[3] The instrument lists the name of the participant as "Amy Moore," Brooks's alias throughout the investigation.
[4] Brooks described the cashier as fitting the description of one of the owners. However, during her testimony at the pre-disqualification hearing, at which both owners were present, Brooks could not positively identify either owner as being the cashier during the compliance buy. *Page 315