620 So.2d 651 (1993)
JEFFERSON COUNTY, et al.
v.
ALABAMA CRIMINAL JUSTICE INFORMATION CENTER COMMISSION, et al.
1910571.
Supreme Court of Alabama.
May 7, 1993.
*652 Jere L. Beasley and Thomas J. Methvin of Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, for appellants.
Mays R. Jemison of Jemison & Mendelsohn, Montgomery, for appellees.
Don Siegelman of Cherry, Givens, Lockett & Diaz, Montgomery, for amicus curiae Alabama Sheriffs Ass'n.
Edwin A. Strickland, County Attorney, Birmingham, and Jeffrey M. Sewell and Charles S. Wagner, Asst. County Attys., for appellants on petition for rehearing.
Jere L. Beasley, Mays R. Jemison, Thomas J. Methvin of Beasley, Wilson, Allen, Mendelsohn, Jemison & James, P.C., Montgomery, for Alabama Crim. Justice Information Center Comm'n, Alabama Crim. Justice Information Center and Larry Wright, for appellees on petition for rehearing.
Bart Harmon of Webb, Crumpton, McGregor, Davis & Alley, Montgomery, for amicus curiae Ass'n of County Comm'ns of Alabama, on petition for rehearing.
Don Siegelman of Cherry, Givens, Lockett & Diaz, Montgomery, for amicus curiae Alabama Sheriffs Ass'n, on petition for hearing.
James H. Evans, Atty. Gen., amicus curiae, on petition for rehearing.

ON APPLICATION FOR REHEARING
PER CURIAM.
The opinion of August 28, 1992, is withdrawn and the following is substituted therefor.
The plaintiffs, Jefferson County and the City of Birmingham, challenge a computer user fee unilaterally imposed upon them by the Alabama Criminal Justice Information Center Commission (the "ACJIC"). The two questions before this Court are whether the ACJIC is legally authorized to adopt a rule whereby costs charged to ACJIC by the Finance Department for computer time are passed on to law enforcement agencies such as the plaintiffs, and whether the ACJIC is subject to the Alabama Administrative Procedure Act, § 41-22-1 et seq. ("AAPA"). We hold that the ACJIC is not so authorized, and that the ACJIC is subject to the AAPA.
The parties on March 6, 1991, stipulated to the following facts:
"1. Jefferson County, Alabama (hereinafter `County'), is a political subdivision of the State of Alabama.
"2. The City of Birmingham, Alabama (hereinafter `City') is a municipal corporation organized and existing under the laws of the State of Alabama.
"3. Melvin Bailey (hereinafter `Sheriff' or `Sheriff Bailey') is the duly elected Sheriff of Jefferson County, Alabama.
"4. Arthur Deutcsh (hereinafter `Chief' or `Chief Deutcsh') is the duly appointed Chief of the Police Department of the City of Birmingham, Alabama.
"5. The Alabama Criminal Justice Information Center Commission (hereinafter ACJICC) and the Alabama Criminal Justice Information Center (hereinafter ACJIC) are agencies of the State of Alabama created in 1975 pursuant to Alabama Act 75-872, now codified at § 41-9-590, et seq., Alabama Code 1975.
"6. Larry Wright is the duly appointed Executive Director of ACJIC. At all times material to this case, Larry Wright was acting in his official capacity.
"7. As expressed in § 41-9-591, ACJIC was created to establish, develop and continue to operate a center and system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes.

*653 "8. ACJICC and ACJIC have been primarily funded by the State of Alabama via the State Appropriation Bill each year since the creation of said agencies. ACJICC and ACJIC have received rent from users of ACJIC-owned computers.
"9. In December 1976, the County's central or `mainframe' computer was connected by telephone line to the ACJIC computer database. In May 1976, the City's central or `mainframe' computer was connected by telephone line with the ACJIC computer database.
"10. At present, the County owns approximately 149 stationary computer terminals which are capable of accessing the ACJIC database through the County's mainframe computer. Seventy-nine of these terminals are used by the County Revenue Department to obtain automobile registration and license information. The remaining terminals are used by the Sheriff's Department, the District Attorney, the Circuit Clerk, Tenth Judicial Circuit of Alabama, and the Jefferson County Information Services Department. These terminals are used to obtain automobile registration and license information; criminal identification data; criminal histories on persons suspected of criminal activity; outstanding arrest warrants from other jurisdictions; conviction records; and other information necessary to the efficient operation of the Sheriff's Department. The County also enters data into the ACJIC database which consists of certain information that is retained and used by many other local, state and federal law enforcement agencies inside and outside of Alabama.
"11. At present, the City owns 132 stationary computer terminals which are capable of accessing the ACJIC database through the City's mainframe computer. These terminals are used to obtain criminal identification data; criminal histories on persons suspected of criminal activity; outstanding arrest warrants from other jurisdictions; conviction records; and other information necessary to the efficient operation of the Birmingham Police Department. The City also enters data into the ACJIC database which consists of certain information that is retained and used by many other local, state and federal law enforcement agencies inside and outside of Alabama.
"12. During calendar year 1990, the County records indicate that the County conducted 341,105 computer transactions with ACJIC through the County's mainframe computer. Of these transactions, County records indicate that approximately 22,304 transactions involved the inputting of information into the ACJIC database. ACJIC has not reviewed these records and does not stipulate to their accuracy.
"13. During calendar year 1990, the City records indicate that the City conducted 626,640 computer transactions with ACJIC through the City's mainframe computer. Of these transactions, City records indicate that approximately 32,406 transactions involved the inputting of information into the ACJIC database. ACJIC has not reviewed these records and does not stipulate to their accuracy.
"14. On January 19, 1989, ACJICC voted to impose a computer user fee on the County and City and other users in the amount of $25.00 per month per Countyand/or City-owned stationary terminal and $10.00 per month per mobile-vehicle terminal owned by the County and/or City. Said user fee was to become effective October 1, 1989. The minutes of the January 19, 1989, meeting are attached hereto as Exhibit `A' and are admissible evidence in this case.
"15. ACJICC did not index nor make available for public inspection its decision to impose user fees prior to the imposition of said fees upon the County and City.
"16. ACJICC did not publish any notice of the proposed user fees in the Alabama Administrative Monthly or any other periodical prior to imposing user fees upon the County and City.
"17. ACJIC did not provide a copy of its proposed decision to impose user fees to the Chairman of the Joint Committee *654 on Administrative Regulation Review prior to the imposition of user fees upon the County and City.
"18. ACJIC did not file a certified copy of its decision to impose user fees upon the County and City with the Legislative Reference Service within fifteen (15) days of the imposition of said fees.
"19. ACJIC submitted invoices to the County and the City for the user fees for the period October 1, 1989, through present.
"20. Representatives of the County and City were permitted to address ACJICC on January 11, 1990, in opposition to the imposition of user fees.
"21. After hearing the County's and City's objections on January 11, 1990, ACJICC voted to disconnect the County and City from the ACJIC computer database if the user fees were not paid within thirty (30) days of January 11, 1990.
"22. The County and City have never paid a user fee to ACJICC or ACJIC.
"23. Each year since its creation, ACJICC has presented a request to the Governor for funds based on projected needs for criminal justice information systems in the state together with a budget showing proposed expenditures.
"24. On October 11, 1983, the Chief of Police of Birmingham, Alabama, Arthur Deutcsh, signed a user agreement with ACJIC. That document is attached as Exhibit `B' and is admissible evidence in this case.
"25. On August 22, 1983, Sheriff Melvin Bailey signed a user agreement with ACJIC. That document is attached as Exhibit `C' and is admissible evidence in this case.
"26. On November 3, 1988, Larry Wright notified the City and County that ACJIC would impose a computer fee. This memorandum is attached hereto as Exhibit `D' and is admissible evidence in this case.
"27. On February 3, 1989, Larry Wright sent a letter to Melvin Bailey. That letter is attached as Exhibit `E' and is admissible evidence in this case.
"28. On February 8, 1989, Sheriff Melvin Bailey sent a letter to Larry Wright. That letter is attached as Exhibit `F' and is admissible evidence in this case.
"29. On August 15, 1989, Larry Wright again notified the County and City of the imposition of a computer fee. A copy of that memorandum is attached as Exhibit `G' and is admissible evidence in this case.
"30. On January 19, 1990, Larry Wright sent a letter to Sheriff Melvin Bailey. That letter is attached as Exhibit `H' and is admissible evidence in this case.
"31. On January 26, 1990, Larry Wright sent a letter to Melvin Bailey. That letter is attached as Exhibit `I' and is admissible evidence in this case.
"32. The amount of money owed to date to ACJIC by Jefferson County, if any, is $54,392.91. ACJIC bills quarterly. The next billing is due in April.
"33. The amount of money owed to date to ACJIC by the City of Birmingham, Alabama, if any, is $50,642.37. ACJIC bills quarterly. The next billing is due in April.
"34. Currently, the City of Birmingham and Jefferson County, Alabama, are each using one (1) computer owned by ACJIC.
"35. The City of Birmingham, Alabama, and Jefferson County, Alabama, have each paid rent on the one (1) ACJIC-owned computer terminal that they each have used over the years. The County and City had been paying $425.00 per month and that amount was raised to $450.00 per month effective October 1, 1989.
"36. ACJIC has provided uninterrupted service to the City of Birmingham and Jefferson County even though [it has] not been paid a computer user fee by the City of Birmingham and Jefferson County.
"37. ACJIC has 200 terminals that it owns throughout the State of Alabama. All other state and local agencies have *655 also paid rent on ACJIC-owned computer terminals.
"38. Prior to October 1988, ACJIC was billed a flat fee by the State of Alabama Department of FinanceData Systems Management Division (DSMD) in the amount of $50,000.00 per month.
"39. In October 1988, DSMD started billing ACJIC for actual computer time ACJIC used. The average bill ACJIC has had since that time has been $100,000.00 per month.
"40. In order to help defray costs, ACJIC imposed a user fee of $25.00 per month per terminal for every user-owned terminal connected to a mainframe computer which accessed the ACJIC computer database. This computer user fee become effective October 1, 1989.
"41. The County and City's mainframe computers are central computers to which other terminals are connected for purposes of accessing the State of Alabama Department of Finance's computer. The cities of Birmingham, Montgomery, Mobile, Opelika and Homewood; the Mobile County Communications District; Jefferson County, Alabama; and the Alabama Department of Public Safety each have mainframe computers that communicate directly with the State of Alabama Department of Finance computer.
"42. All of the above mentioned agencies have paid the $25.00 per month per terminal user fee except Jefferson County and the City of Birmingham. The City of Mobile has paid all user fees except the last quarterly payment.
"43. Effective October 1, 1989, ACJIC also imposed a $10.00 per month per terminal user fee for user-owned mobile computer terminals. Mobile computer terminals are terminals which are used in automobiles. All users that own mobile terminals have paid the $10.00 per month per terminal user fee, except the City of Birmingham; Jefferson County; and the City of Mobile has failed to pay the last quarterly payment."
The stipulation of facts makes it clear that the plaintiffs/appellants appeared before the ACJIC Commission to protest the user fee. After hearing the objections, the ACJIC voted to disconnect the City of Birmingham and Jefferson County from the ACJIC computer database if the user fees were not paid. Following this decision of the ACJIC, the plaintiffs initiated this lawsuit in the Jefferson County Circuit Court by filing a notice of appeal and a petition for review in accordance with the AAPA, which provides for judicial review of final actions or decisions of state agencies. The petition for review alleged that the ACJIC adopted the computer user fee without first complying with the provisions of the AAPA.
Accompanying the petition for review was a request for a stay and a motion to expedite. On January 29, 1990, the trial court entered an order setting a hearing on the motion to expedite. The court granted the stay on February 9, 1990. On February 26, 1990, the ACJIC filed a motion to dismiss, contending that there was no "contested case" as defined in § 41-22-3(3), and that the imposition of the user fee was not a "rule" as defined in § 41-22-3(9). In the alternative, the ACJIC contended that even if the AAPA applied, venue was proper only in Montgomery County, Alabama.
The plaintiffs responded to this motion to dismiss by filing a response that contended that § 41-22-20 authorizes the appeal of agency final decisions or actions, and that they had a statutory right of appeal from the decisions or actions of the ACJIC. They further argued that, pursuant to § 41-22-20(b), venue was proper in Jefferson County, because no other statute makes provision for appealing a final decision of the ACJIC Commission. Further pleadings were filed, culminating in the ACJIC's filing of a petition for a writ of mandamus in this Court.
On August 31, 1990, this Court transferred the petition for writ of mandamus to the Court of Civil Appeals. The Court of Civil Appeals held in Ex parte Alabama Criminal Justice Information Center Commission, 572 So.2d 487 (Ala.Civ.App. 1990), that the ACJIC is exempt from the AAPA and need not comply with the AAPA *656 before adopting and imposing the rule at issue in this case. The Court of Civil Appeals reasoned that under § 41-9-594, Code of Alabama 1975, the ACJIC Commission has the authority to "establish its own rules, regulations and policies for the performance of the responsibilities charged to it in this article," and "may establish other policies and promulgate such regulations that provide for the efficient and effective use and operation of the Alabama criminal justice information center." The Court of Civil Appeals issued a writ of mandamus directing the Jefferson County trial judge to transfer this case to the Montgomery County Circuit Court.
On November 28, 1990, the plaintiffs filed a petition for writ of mandamus in this Court, seeking a review of the decision of the Court of Civil Appeals. This Court denied the petition on January 14, 1991, and the case was transferred to Montgomery County.
On March 27, 1991, the ACJIC filed a motion for summary judgment in Montgomery County, which was heard on February 27, 1991. The parties executed the joint stipulation of facts set out herein. The trial court entered a summary judgment in favor of the ACJIC on August 16, 1991. In entering the summary judgment, the trial judge stated in pertinent part:
"This case presents the question of whether ACJIC is legally authorized to adopt a rule of procedure whereby costs charged to ACJIC by the Finance Department for computer time are passed on to such law enforcement agencies as the Plaintiffs. This case does not involve whether ACJIC will transmit requested information by other means, such as written reports, or telephone reports, or through the mail. ACJIC recognizes that it is required to furnish such reports. The question at bar solely involves reimbursement by Plaintiffs to ACJIC for what ACJIC is required to pay the Department of Finance for computer time that Plaintiffs use. ACJIC agrees that agencies such as the Plaintiffs are legally entitled to receive reports. However, ACJIC argues, if Plaintiffs elect to receive computer reports, which ACJIC is not required to provide, ACJIC is entitled to be reimbursed for amounts ACJIC is actually charged by the Finance Department to provide Plaintiffs this computer time. This court agrees.
". . . .
"In 1983, both the County and [the] City executed a Terminal User Agreement with ACJIC. By agreement, the County and City have each paid rent to ACJIC for the one (1) ACJIC-owned terminal located in their respective law enforcement departments. However, the County and City have never paid a user fee or any other fee to ACJIC for access to the data base. Plaintiffs state that ACJIC did not advertise [its] decision to charge a user fee, nor did [it] publish the decision in the Alabama Monthly Magazine. Notwithstanding this, Plaintiffs were present and their feelings were heard by ACJIC before its enactment.
". . . .
"After careful consideration of the stipulated facts, this Court finds that the ACJIC may pass on the terminal user fee in order to fund obligations owed to the State Finance Department. The rulemaking authority of ACJIC derives from Section 41-9-594, Alabama Code (1975), which reads as follows: `The commission shall establish its own rules, regulations and policies for the performance of the responsibilities charged to it in this article.' Furthermore, Section 41-9-621, Alabama Code (1975), authorizes the dissemination of information by ACJIC to appropriate Criminal Justice Agencies. In practice, this information has been available either through calling ACJIC in Montgomery or using an on-line computer terminal such as that used by the Plaintiffs. The Court understands, as previously noted, that if Plaintiffs do not wish to pay for the computer service, they may still receive the identical criminal information without a computer charge by calling or writing the ACJIC office in Montgomery. [ACJIC currently disseminates criminal information to many state and local law enforcement agencies in this manner. ACJIC would *657 be fulfilling its statutory obligation by disseminating criminal information to Plaintiffs in that manner.][1]
"It is, therefore, ORDERED, ADJUDGED and DECREED that Summary Judgment is due to be, and [it] hereby is, issued in favor of the Defendants, ACJIC, and against Plaintiffs, Jefferson County....
"The Court hereby enters judgment in favor of the defendants and orders the stay lifted and the plaintiff City of Birmingham to pay for services rendered by ACJIC prior to April 1991 in the amount of $50,642.37. Plaintiff Jefferson County is ordered to pay for services rendered by ACJIC prior to April, 1991 in the amount of $54,392.91. Plaintiffs are also ordered to pay for services rendered by ACJIC since April 1991 to date and into the future so long as they receive the computer service from ACJIC. Plaintiffs are to pay $25 per month per city and county computer terminal and $10 per city and county mobile vehicle terminals for this service.
"The costs of these proceedings shall be taxed against the Plaintiffs, [for] the collection of which execution may issue."
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala.1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Two issues are before us: 1) whether the ACJIC is legally authorized to adopt a rule whereby costs charged to the ACJIC by the Finance Department for computer time are passed on to such law enforcement agencies as the plaintiffs, and 2) whether the ACJIC is subject to the provisions of the AAPA.
We look first to the enabling legislation that creates the Alabama Criminal Justice Information Center Commission, Act No. 872, Ala.Acts 1975. See § 41-9-590 et seq., Code of Alabama 1975. The legislation provides that the ACJIC Commission "shall establish, develop and continue to operate a center and system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity." § 41-9-591. The ACJIC Commission is directed to "provide for a uniform crime reporting system for the periodic collection and analysis of crimes reported to any and all criminal justice agencies within the state," and the statute provides that "The collection of said data and the time for submission of said data shall be subject to the commission's regulation-making authority." § 41-9-620.
The ACJIC Commission is also delegated the responsibility to:
"(6) Make available, upon request, to all criminal justice agencies in this state, to all federal criminal justice and criminal identification agencies and to state criminal justice and criminal identification agencies in other states any information in the files of the ACJIC which will aid these agencies in crime fighting; for this purpose the ACJIC shall operate 24 hours per day, seven days per week."
§ 41-9-621.
The ACJIC enabling legislation reveals an obvious legislative intent that the ACJIC and its user agencies share information with each other for the benefit of all law enforcement agencies throughout the State and the nation. Were it not for the input of local governments into the system, there would be no data base. Undisputed testimony in this case indicates that the City of Birmingham entered approximately 32,406 transactions into the ACJIC data base in 1990, while Jefferson County entered *658 approximately 22,304 transactions that year.
The ACJIC enabling legislation expressly requires that the ACJIC be funded by the State:
"Annually the commission shall present to the governor a request for funds based on projected needs for criminal justice information systems in the state, together with a budget showing proposed expenditures, and the governor may include in his appropriation bill a request for funds to meet the financial needs of the commission."
§ 41-9-599. The enabling legislation contains no other provision regarding funding for the ACJIC.
We note that the enabling legislation contains no express authority for the ACJIC to charge user agencies for access to the system. The trial court concluded that the terms of § 41-9-594 imply the authority to impose a user fee. We disagree. Our review of the ACJIC enabling legislation fails to disclose any provision from which an implied power to assess a user fee could be derived. The rulemaking powers found in § 41-9-594 cannot be read so as to make cities and counties financially responsible for funding the ACJIC. While § 41-9-594 does give a general grant of power to the ACJIC to "establish its own rules, regulations and policies for the performance of the responsibilities charged to it in this article," that general grant of power is followed by an enumeration of particular classes of responsibility and authority. The broad statement of authority in § 41-9-594 is followed by a directive to the ACJIC Commission to ensure that use of the "data available through [the ACJIC] system" is restricted to "properly authorized persons and agencies." There is no mention of user fees or service charges.[2]
It is clear that the legislature intended for the ACJIC to be funded by the State. As previously noted, the ACJIC enabling legislation expressly requires the ACJIC to obtain funding via the State Appropriation Bill. We also note that the enabling legislation contains a number of provisions imposing specific duties and obligations upon local government. None of these provisions imposes an obligation to fund the ACJIC.
Under the principle of expressio unis est exclusio alterius, a rule of statutory construction, the express inclusion of requirements in the law implies an intention to exclude other requirements not so included. City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305 (1941); Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933). It is clear that if the legislature had intended to make local governments responsible for the financial needs of the ACJIC, it would have done so when it set out specific duties in the statute.
The ACJIC has been funded by the State, not by local governments, since its inception in 1975.[3] The ACJIC's interpretation and application of the enabling legislation further confirms the already clear legislative intent that local governments not be a funding source for the ACJIC. It is settled law in Alabama that an administrative agency is purely a creature of the legislature and has only those powers conferred upon it by the legislature. Ethics Commission of the State of Alabama v. Deutcsh, 494 So.2d 606 (Ala.1986); Ex parte City of Florence, 417 So.2d 191 (Ala. 1982). The legislature expressly imposed the ACJIC funding obligation upon the State. § 41-9-599. The ACJIC cannot claim implied powers that exceed and/or conflict with those express powers contained in its enabling legislation. Every rule of statutory construction compels the conclusion that the enabling legislation confers no power upon the ACJIC to charge local government users of the data base. Therefore, we reject the trial court's holding that the ACJIC has implied power beyond that conferred by the legislature.
*659 We next consider whether the ACJIC is subject to the AAPA. The scope of the AAPA is stated at § 41-22-2(d); that section provides:
"Every state agency having express statutory authority to promulgate rules and regulations shall be governed by the provisions of this chapter.... Nothing in this chapter shall be construed as granting to any agency the authority to adopt or promulgate rules and regulations."
The term "agency" is defined in § 41-22-3(1) as follows:
"(1) AGENCY. Every board, bureau, commission, department, officer, or other administrative office or unit of the state, including the Alabama department of environmental management, other than the legislature and its agencies, Alabama state docks, the courts or the Alabama public service commission or the state banking department, whose administrative procedures are governed by sections 5-2A-8 and 5-2A-9. The term shall not include boards of trustees of postsecondary institutions, counties, municipalities, or any agencies of such local governmental units, unless they are expressly made subject to this act by general or special law."
The ACJIC enabling act grants express authority to the Commission to promulgate rules and regulations, and the ACJIC is not expressly exempt from the statutory definition of the term "agency." Therefore, in accordance with § 41-22-2(d), the ACJIC is subject to the AAPA. Moreover, we note that the record reflects that in its answers to requests for admissions the ACJIC admitted that it is an agency of the State of Alabama as the term "agency" is defined at § 41-22-3(1), Code of Alabama 1975.
Finally, we note that § 41-22-25, part of the AAPA, provides an unequivocal legislative mandate that the AAPA be broadly construed. Section 41-22-25(b) provides that "this chapter shall be construed to apply to all covered agency proceedings and all agency action not expressly exempted by this chapter or by another statute specifically referring to this chapter by name." We hold that the ACJIC is clearly subject to the AAPA.
For the foregoing reasons, the judgment of the trial court is reversed and a judgment is rendered in favor of the appellants.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND JUDGMENT RENDERED.
MADDOX, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
STEAGALL, KENNEDY and INGRAM, JJ., dissent.
STEAGALL, Justice (dissenting).
Section 41-9-591, Ala.Code 1975, provides that the Alabama Criminal Justice Information Center Commission "shall establish, develop, and continue to operate a center and system for the interstate and intrastate accumulation, storage, retrieval, analysis and dissemination of vital information relating to certain crimes, criminals and criminal activity." Under § 41-9-620, the ACJIC is required to provide for a uniform crime reporting system for collection and analysis of reports of crimes to criminal justice agencies within the state and, under § 41-9-621, the ACJIC is also required to make available any information in the ACJIC files that will aid in fighting crime to all criminal justice agencies within this state, to all federal criminal justice and criminal identification agencies, and to criminal justice and criminal identification agencies in other states. The ACJIC is not, however, required to provide computer reports or use of computer time to these agencies.
I agree with the Court of Civil Appeals that the ACJIC is not subject to the provisions of the Alabama Administrative Procedure Act, § 41-22-1 et seq. (see Ex parte Alabama Criminal Justice Information Center Commission, 572 So.2d 487 (Ala. Civ.App.1990)) and with the trial court's holding that the ACJIC is authorized under § 41-9-594 (its rule-making authority) to adopt rules, regulations, and policies that concern the ACJIC's responsibilities to provide *660 for an efficient and effective operation.
In 1983, both Jefferson County and the City of Birmingham entered into a "Terminal User Agreement" with the ACJIC, under which rent was to be paid for one terminal located in their respective law enforcement departments. They have paid rent for years on these terminals. In my opinion, this is an admission that the ACJIC had the authority to charge a fee. Moreover, it appears from the stipulations in this case that every user other than Jefferson County and the City of Birmingham has paid the user fee.
As stated in the majority opinion, the parties in this case stipulated that 79 of the 149 computer terminals owned by Jefferson County that are capable of accessing the ACJIC database through the county's mainframe computer are used by the Jefferson County Revenue Department to obtain automobile registration and license information. I do not believe that the Legislature, in creating the ACJIC, intended for user agencies to have unlimited discretion to use the State's computer system.
I would affirm the trial court's judgment and hold that under its rule-making authority, the ACJIC may promulgate a rule requiring these agencies to reimburse the ACJIC for costs charged to the ACJIC by the State Finance Department for computer time. Therefore, I respectfully dissent.
INGRAM, J., concurs.
KENNEDY, Justice (dissenting).
I concurred in the original opinion in this case. However, after reviewing the ACJIC's application for rehearing, and after much deliberation on the application, I am persuaded that the majority opinion is in error. Accordingly, I respectfully dissent from the denial of the ACJIC's application for rehearing.
In my view, the ACJIC has the authority to impose user fees under its express rule-making authority. See Ala.Code 1975, § 41-9-594. This fact is indicated both by the language of § 41-9-594[4] and by the logical result of a contrary interpretation. Without the user fees, the ACJIC's very existence would be in grave jeopardy.
Because state funding for the ACJIC pursuant to § 41-9-599 is aspirational, in holding that the ACJIC's only source of funding is pursuant to § 41-9-599 the majority unreasonably presumes that the legislature gave the ACJIC absolute directives but left it no sure ability to do that which it is required to do. Section 41-9-599 provides:
"Annually the commission shall present to the governor a request for funds based on projected needs for criminal justice information systems in the state, together with a budget showing proposed expenditures, and the governor may include in his appropriation bill a request for funds to meet the financial needs of the commission."
(Emphasis added.) Note that this provision leaves state funding aspirational, depending on the will of the Governor.
Instead of leaving the very existence of the ACJIC to the discretion of the Governor, the legislature expressly gave rule-making power to the ACJIC to facilitate its carrying out its mission, see § 41-9-594, and, necessarily, to facilitate its continued existence.
I note also that although the ACJIC has the authority to disseminate data by direct computer access, the ACJIC is not required by statute to do so, and if it does so as an accommodation to a local government, it certainly is not required to do so at a loss that jeopardizes its existence.
In sum, the notion that the ACJIC should bear the considerable expense of unlimited data access by an unlimited number of computer terminals in Jefferson County (now 281) is unsupported.
Finally, the opinion of the court discusses whether the AAPA applies to the ACJIC. Although this is unclear, I presume that the opinion addresses the specific question of whether (assuming arguendo that it has *661 the rule-making authority to impose user fees) the ACJIC was required to adhere to the AAPA in its method of imposing the user fees, something the ACJIC did not do.
The opinion of the court holds that the ACJIC is an "agency," a fact the ACJIC does not dispute, and the majority concludes from that holding that the AAPA would apply. This conclusion is flawed because the opinion fails to address § 41-22-2(a), a part of the AAPA, which states: "This chapter is intended to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public." (Emphasis added.) To determine only, as the opinion of the Court does, that the ACJIC is an "agency," begs the question whether the AAPA applies to this agency, which has no public access and is strictly an intergovernmental entity. See Ex parte Alabama Criminal Justice Information Center Comm'n, 572 So.2d 487 (Ala.Civ.App.1990).
NOTES
[1] This Court has added the brackets; the appellants argue that the statement in brackets is not supported by the record evidence.
[2] Section 41-9-644 authorizes the ACJIC to charge a fee (not to exceed $5.00) to individuals seeking copies of their criminal records. This demonstrates that the legislature took fees into consideration, but that it authorized a fee only in this limited situation.
[3] See paragraphs 8 and 23 of the stipulation of facts, supra.
[4] Stating, in pertinent part: "The commission shall establish its own rules, regulations and policies for the performance of the responsibilities charged to it in this article."