On Application for Rehearing

SMITH, Justice.
This Court’s opinion of May 29, 2009, is withdrawn, and the following is substituted therefor.
This appeal involves challenges to two policies the State Board of Education (“the Board”) adopted regarding the two-year-college system. The Montgomery Circuit Court entered a summary judgment declaring the policies invalid and issued an injunction preventing the implementation of those policies. We reverse and remand.

Facts and Procedural History

On August 23, 2007, the Board adopted the two policies at issue in this case: Policy 609.04 and Policy 220.01. Policy 609.04, entitled “Flexible Work Schedule,” provides:
“All Alabama College System[1] employees engaged in outside employment or activities during their normal work hours must request personal, annual, or unpaid leave in accordance with State Board policy. Unpaid leave may be granted only in accordance with and for *1051 the reasons outlined in Policy 611.01: Leaves Without Pay.”[2]
Policy 220.01 prohibits the two-year-college system from employing elected State officials or entering into certain contracts with elected State officials.[3] Specifically, Policy 220.01 provides:
“Employing authorities may not employ any elected state official. However, an elected state official who was actively employed as of the effective date of this policy may be continued in the same position of employment until the expiration of his or her term of office then in effect. In such case, the elected state official shall not be eligible for promotion, advancement, or any non-statutory pay raise or bonus during his or her term of office.
[[Image here]]
“Employing authorities may not enter into any personal or professional services contract under which services are to be performed by an elected state official.
“Employing authorities may not enter into any other type of contract or business relationship with any corporation, partnership, company, joint venture, or other business entity in which any elected state official holds a financial interest of five percent (5%) or more.
“Notwithstanding the foregoing, any contract of the' kind described above which is in existence as of the effective date of this policy need not be immediately terminated but shall be terminated on the earliest date for which the contract may be terminated without penalty, and no such contract may be renewed, extended, or amended to expand the term or alter the termination procedure or penalties.
[[Image here]]
“An employee who is elected or re-elected to an elected state office after the effective date of this policy must submit his or her resignation effective on or before taking office. Nothing in this policy shall be construed to restrict or limit an employee’s right to campaign for elected state office, provided that campaign-related activities are conducted while on approved leáve or on personal time before or after work and on holidays, consistent with state law.”
The plaintiffs filed the present action on August 24, 2007, the day after the Board adopted the policies. Most of the plaintiffs are members of the Alabama Legislature who were also employed in or who desired to become employed in the two-year-college system.[4] The plaintiffs sought (1) a judgment declaring Policy 609.04 and Policy 220.01 void under Alabama law and (2) injunctive relief prohibiting the defendants — the Department of Postsecondary Education and its chancellor, Bradley Byrne,[5] and the Board and its members— from implementing Policy 609.04 and Poli *1052 cy 220.01 (all the defendants are hereinafter collectively referred to as “the Board defendants”).[6] The plaintiffs challenged the policies as, among other things, conflicting with provisions of the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975 (“the AAPA”), the Fair Dismissal Act, § 36-26-100 et seq., Ala. Code 1975, and § 17-1-4, Ala.Code 1975. The plaintiffs also contended that the policies were unconstitutional.
After the Board defendants filed an answer to the complaint, the plaintiffs moved for a summary judgment on the ground that Policy 609.04 and Policy 220.01 had been adopted in violation of the AAPA. The Board defendants filed a counterclaim seeking a judgment declaring that Policy 609.04 and Policy 220.01 were valid and that the policies did not conflict with the AAPA or with any of the other provisions of Alabama law cited by the plaintiffs.
Along with a brief and evidentiary submissions, the Board defendants filed a cross-motion for a summary judgment as to each of the plaintiffs’ statutory and constitutional challenges to the policies. The plaintiffs filed a reply brief along with evidentiary submissions arguing that the policies indeed were in conflict with each of the statutory and constitutional provisions addressed by the Board defendants in their cross-motion for a summary judgment.
On March 31, 2008, the trial court heard oral argument on the cross-motions for a summary judgment. The trial court entered an order the next day preliminarily enjoining the Board defendants from implementing the policies.[7]
On November 14, 2008, the trial court entered an order granting the plaintiffs’ summary-judgment motion. The trial court held that Policy 609.04 and Policy 220.01 were “null and void” because, it concluded, they had been adopted in violation of the AAPA. The trial court also permanently enjoined the Board defendants from “further implementing and enforcing State Board of Education Policies 609.04 and 220.01 unless and until said policies are promulgated pursuant to the Alabama Administrative Procedure Act” and from interfering “with the flexible schedule arrangements previously approved and permitted for legislators by Postsecondary Education Department institutions and programs.” The Board defendants appeal.

Standard of Review

This Court reviews a summary judgment de novo. Maciasz v. Fireman’s Fund Ins. Co., 988 So.2d 991, 994-95 (Ala. *1053 2008). This appeal presents no genuine issues of material fact, but only questions of law, which this Court also reviews de novo, giving no presumption of correctness to the trial court’s rulings on such questions. See, e.g., Pittsburg & Midway Coal Mining Co. v. Tuscaloosa County, 994 So.2d 250, 254 (Ala.2008). Additionally, under the circumstances of this case, our review of the issuance of the permanent injunction is de novo. Drummond Co. v. Walter Indus., Inc., 962 So.2d 753, 773 (Ala.2006).[8]

Discussion

I.

A.

The trial court held that, in adopting the policies, the Board failed to comply with the requirements of the AAPA codified at § 41-22-5 and § 41-22-23, Ala.Code 1975. Section 41-22-5 sets forth certain requirements that notice be given before an administrative agency adopts a rule.[9]
Section 41-22-23, Ala.Code 1975, requires that the agency provide copies of a *1054 proposed rule to the chair of the Alabama Legislature’s Joint Committee on Administrative Regulation Review and authorizes that committee, among other things, (1) to hold public hearings on the proposed rule; (2) to propose an amendment to the proposed rule; and (3) to approve or disapprove the proposed rule. In the present case, it is undisputed that the Board adopted Policy 609.04 and Policy 220.01 without complying with the requirements set forth in § 41-22-5 and § 41-22-23.[10]
Section '41-22-8(1) of the AAPA defines an “agency” as:
“Every board, bureau, commission, department, officer, or other administrative office or unit of the state, including the Alabama Department of Environmental Management, other than the Legislature and its agencies, the Alabama State Port Authority, the courts, the Alabama Public Service Commission, or the. State Banking Department, whose administrative procedures are governed by Sections 5-2A-8 and 5-2A-9. The term, shall not include boards of trustees of postsecondary institutions, counties, municipalities, or any agencies of local governmental units, unless they are expressly made subject to this chapter by general or special law.”
(Emphasis added.)
The Board defendants contend that in its governance of the two-year colleges, the Board satisfies the exception, emphasized in the above definition, for “boards of trustees of postsecondary institutions.” Alternatively, the Board defendants contend that, even if the Board is not exempted from the definition of “agency” under § 41-22-3(1), the requirements of the AAPA nonetheless do not apply, to Policy 609.04 and Policy 220.01 because, they argue, those policies are exempted from the definition of “rule” in § 41-22-3(9) of the AAPA. We agree with the Board defendants’ latter contention and therefore need not decide whether the Board is exempted from the definition of “agency” under § 41-22-3(1) of the AAPA.
“Rule” is defined in § 41-22-3(9) as follows:
*1055 “Each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule or by federal statute or by federal rule or regulation.... The term includes the amendment or repeal of all existing rules, but does not include any of the following:
“a. Statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public.
[[Image here]]
“c. Intergovernmental, inter-agency, and intra-agency memoranda, directives, manuals, or other communications which do not substantially affect the legal rights of, or procedures available to, the public or any segment thereof.
[[Image here]]
The Board defendants contend that one or both of the exceptions quoted above apply to the policies at issue in this case. They argue that Policy 609.04 and Policy 220.01 are personnel and employment policies that by their terms govern only the internal management of the two-year-college system.
The parties agree that Policy 609.04 did away with the existing practice of individual two-year-college presidents permitting employees to work flexible schedules on a case-by-case basis. The Board defendants assert that the Board adopted Policy 609.04 and Policy 220.01 in response to Advisory Opinion No. 2002-28, issued by the Alabama Ethics Commission, which stated that a public employee who is also an elected official must take annual leave, personal leave, or unpaid leave to attend to his or her duties as an elected official. The advisory opinion stated that a “flexible schedule” should be permitted only after leave has been exhausted and only if the public employer has adopted a flexible-schedule policy equally applicable to all employees. The Board defendants argue that Policy 609.04 and Policy 220.01 command or direct the activities of only the employees of the two-year colleges. For example, Policy 609.04 expressly applies to “[a]ll Alabama College System.employees engaged in outside employment or activities during their normal work hours.” Policy 609.04 provides a uniform “Flexible Work Schedule” policy for employees of two-year colleges. It supplements, and operates by reference to, existing leave policies such as Policy 611.01, “Leaves without Pay,” and Policy 610.01, “Leaves with Pay.”
Similarly, the Board defendants contend regarding Policy 220.01:
“Policy 220.01 is merely a personnel policy that by its terms governs only the two-year colleges. Policy 220.01 does not attempt to command or direct the public, or the legislature, to do anything or refrain from doing anything. Policy 220.01 ‘Elected State Officials: Employment Prohibited’ simply designates a group of State employees as ineligible for dual-employment by, or certain contracts with, the two-year colleges_ Certainly nothing in either of the Policies would prevent those who are interested in public education from running for, or holding, any elected office, or from discharging the duties associated with any such office.”
(Board defendants’ reply brief, pp. 17-18.) Thus, the Board defendants contend that the policies, as personnel or employment policies, govern only the internal management of the two-year-college system and *1056 are therefore not “rules,” as that term is defined in the AAPA. To support their position, the Board defendants rely primarily on Wood v. State Personnel Board, 705 So.2d 413 (Ala.Civ.App.1997).[11]
Wood involved a challenge by an employee of the Department of Corrections (“DOC”) to the DOC’s drug-testing policy. The Court of Civil Appeals, relying on the same exceptions in § 41-22-3(9) at issue here, held that the drug-testing policy was “not subject to the formal rulemaking requirements of the AAPA.” 705 So.2d at 416. The court reasoned:
“One of the primary purposes of the AAPA is ‘to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public.’ Ala. Code 1975, § 41-22-2(a) (emphasis added). Promulgation of the DOC regulation concerning employee drug testing was not an ‘action affecting the rights and duties of the public.’ Instead, the regulation is an internal policy and procedure statement relating strictly to DOC personnel.
“The AAPA excludes from the requirement of administrative rulemaking:
“ ‘a. Statements concerning only the internal management of an agency and not directly and substantially affecting private rights or procedures available to the public.
[[Image here]]
“ ‘c. [Ijntra-agency memoranda, directives, manuals or other communications which do not substantially affect the legal rights of, or procedures available to, the public or any segment thereof.’
“Ala.Code 1975, § 41-22-3(9)(a) and (c).
“The Court of Appeals of Hawaii dealt with an exclusion similar to that appearing in § 41-22-3(9)(a) in In the Interest of Doe, 9 Haw.App. 406, 844 P.2d 679 (1992). In that case, the court held that a police department’s field sobriety testing procedures were not subject to administrative rulemaking because they came within a statutory exclusion for matters ‘concerning the internal management of an agency ... not affecting private rights.’ See also Rossie v. State/Dep’t of Revenue, 133 Wis.2d 341, 395 N.W.2d 801 (1986), review denied, 134 Wis.2d 457, 401 N.W.2d 10 (1987) (departmental directive that prohibited smoking in certain areas of building and authorized discipline for infractions concerned internal management of agency and was not subject to statutory rule-making procedures).
“ ‘An agency need not use rulemaking procedures for its rules which affect only the internal personnel practices or internal management of the agency.... The mere fact that a rule relates to agency personnel is not always sufficient to remove it from rulemaking procedures.... The agency carries the burden of justifying its avoidance of [rulemaking] notice and comment procedures by showing that the effect of the rule is within the personnel or management classes and is solely internal, with no effect on the public.’
“J. O’Reilly, Administrative Rulemaking § 3.06 at 47-48 (1983).
“The Commentary to § 41-22-3(9) states that in determining what agency actions are subject to administrative rulemaking it is important to
*1057 ‘“distinguish the regulatory activity that resembles legislation, applicable to all persons or a relatively large segment of the population outside the context of any specific controversy, from administrative activity that has a more judicial character and which, therefore, ought to be subject to judicial review. See generally K. Davis, Administrative Law Text § 5.06, at 137-38 (3d ed.1972).’
“Regulation 227 is not analogous to ‘legislation applicable to all persons or a relatively large segment of the population outside the context of any specific controversy.’ Instead, it is more like ‘administrative activity that has a judicial character’ because it arises out of a specific controversy (an employee’s alleged use of a controlled substance) and addresses personal rights within the context of a personnel action. Because Regulation 227 relates strictly to the internal personnel practices of the DOC and has no appreciable effect on the public, it was not subject to the rulemak-ing requirements of §§ 41-22-5 and -6.”
705 So.2d at 416-17.
The plaintiffs contend that the policies at issue in the present case are not solely internal-management policies. They argue that the policies are not analogous to the drug-testing policy at issue in Wood because, they contend, Policy 609.04 and Policy 220.01 have a “direct impact on the public.” (Plaintiffs’ brief, p. 41.) Specifically, the plaintiffs contend that those policies will “directly affect[ ]” the number of legislators employed in the two-year-college system and that the composition of the legislature “will be forever altered as individuals have to quit their postsecond-ary jobs because they have, or will, run out of leave necessary to continue their service in the legislature.” (Plaintiffs’ brief, pp. 42-43.) According to the plaintiffs, Policy 609.04 and Policy 220.01 will affect individual legislators who collectively represent between 500,000 and 600,000 people; thus, the plaintiffs argue, the policies will affect a large segment of the public. The plaintiffs also assert that the policies will affect a number of various alleged “private rights.”
The plaintiffs rely primarily on two cases in support of their argument that Policy 609.04 and Policy 220.01 “directly affect” the public and private rights: Stiff v. Alabama Alcoholic Beverage Control Board, 878 So.2d 1138 (Ala.2003), and Jefferson County v. Alabama Criminal Justice Information Center Commission, 620 So.2d 651 (Ala.1993). Neither of those eases, however, involved personnel or employment policies like those at issue in the present case. Stiff involved an internal pricing procedure of the Alcoholic Beverage Control Board pursuant to which the price of table wine was set. 878 So.2d at 1145. Based on authority from other jurisdictions establishing that a pricing policy is an administrative “rule,” this Court held that the challenged procedure was a rule subject to the provisions of the AAPA. 878 So.2d at 1145 & n. 12. The plaintiffs here have not provided any authority suggesting that an employment policy like the policies at issue in the present case — which may or may not affect the public — is a “rule” subject to the AAPA. Therefore, Stiff does not support the plaintiffs’ position.
Likewise, Alabama Criminal Justice Information Center Commission (‘ACJIC”), supra, does not support the plaintiffs’ position. ACJIC involved a challenge to the authority of the' Alabama Criminal Justice Information Center Commission (“the ACJIC”) to assess charges from law-enforcement agencies for computer time. 620 So.2d at 652. This Court held that the legislation creating the *1058 ACJIC did not authorize the ACJIC to charge user agencies for access to its computer system. 620 So.2d at 658. Although this Court also held that the ACJIC was an administrative agency subject to the AAPA, 620 So.2d at 659, this Court did not address whether the ACJIC’s policy of charging for the use of its computer system was a “rule” under the AAPA. Indeed, in light of the holding that the ACJIC was not authorized to assess such charges, there was no opportunity for the Court to consider whether the policy authorizing the charges was a “rule” under the AAPA.
Ultimately, the plaintiffs’ arguments that Policy 609.04 and Policy 220.01 have an effect on the public or on a legal or private right depend on the fact that legislators are elected officials who represent some segment of the population. However, simply because the policies may affect the ability of two-year-college employees to hold outside employment as legislators or to discharge the duties of a second job in addition to their two-year-college employment, it does not follow that the policies affect the public or private rights in the manner contemplated by § 41-22-8(9)a. or § 41-22-3-(9)c. of the AAPA. Like the policy at issue in Wood, Policy 609.04 and Policy 220.01 are “not analogous to ‘legislation applicable to all persons or a relatively large segment of the population outside the context of any specific controversy.’ Instead, [they are] more like ‘administrative activity that has a judicial character’ because [they] arise[ ] out of a specific controversy” — i.e., the pursuit of outside employment by an employee of the two-year-college system or, for example, the decision to forgo employment in the two-year-college system upon becoming an elected official — “and address[ ] personal rights within the context of a personnel action.” See Wood, 705 So.2d at 417. Ultimately, the plaintiffs cite no authority holding that whether an agency’s employment and personnel policies have an effect on the public is determined by whether the employee is an elected official.
Accordingly, we hold that Policy 609.04 and Policy 220.01 are internal-management policies and as such are exempt from the definition of “rule” in the AAPA. Thus, the trial court erred in holding that the Board was required to follow the AAPA in adopting the policies.

B.

The only issue presented in the plaintiffs’ summary-judgment motion, as noted above, is whether the policies were adopted in violation of the AAPA. The plaintiffs’ complaint included additional, non-AAPÁ challenges to the policies, and, as noted, the Board defendants moved for a summary judgment on their claim seeking a declaration that Policy 609.04 and Policy 220.01 were valid, both as to the plaintiffs’ challenges under the AAPA and otherwise. The plaintiffs filed opposing materials to the Board defendants’ cross-motion for a summary judgment, but, significantly, the plaintiffs did not move for a summary judgment as to their non-AAPA challenges.
In their initial brief to this Court on appeal, the Board defendants address each of the non-AAPA challenges on which they moved for a summary judgment. Their stated reason for addressing the non-AAPA challenges is because, they contend, this Court could consider those challenges as alternative grounds upon which to affirm the summary judgment in favor of the plaintiffs. In addition to arguing against an affirmance on those grounds, however, the Board defendants also ask us to reverse the summary judgment on those non-AAPA claims.
*1059 The trial court’s order granting the plaintiffs’ summary-judgment motion also denied the defendants’ cross-motion for a summary judgment as to the non-AAPA challenges. In particular, the trial court’s order stated .that because it had determined that the policies violated the AAPA, “the court need not reach the other issues raised by the plaintiffs in this case.” Thus, the trial court expressly declined to rule on the plaintiffs’ non-AAPA challenges to the policies.
In their brief to this Court, the plaintiffs assert that, because the plaintiffs did not move for a summary judgment on the non-AAPA grounds, we may not affirm or reverse the judgment in their favor on any of the alternative grounds addressed by the Board defendants. More specifically, the plaintiffs argue that reviewing the non-AAPA challenges would be improper at this stage because, rather than affirming on an alternative basis raised in the plaintiffs’ summary-judgment motion granted by the trial court, we would be reviewing grounds raised in the cross-motion for a summary judgment filed by the Board defendants, which the trial court denied.
Because the trial court expressly refused to address the non-AAPA challenges and because the plaintiffs, as the appellees, ask us not to address alternative bases upon which to affirm the summary judgment entered in their favor, citing the necessity for additional materials in support of their position, we decline to address the non-AAPA challenges under the circumstances of this case. See, e.g., Purcell v. Alfa Mut. Ins. Co., 824 So.2d 768, 766 n. 1 (Ala.Civ.App.2001) (Murdock, J., concurring in the result):
“In cases where the appellate court cannot determine from the trial court’s judgment whether the trial court based a summary judgment on a particular ground, as a matter of judicial efficiency as much as anything, and because we review summary judgments on a de novo basis, we have proceeded to address that particular ground, rather than returning the case to the trial court for additional proceedings and, possibly, a second appeal. However, in cases where it .affirmatively appears from the trial court’s judgment or otherwise that the trial court has not reached a particular ground for summary judgment and the appellee has not presented and argued that ground to the appellate court, Aabama’s appellate courts have declined to consider such ground as a basis for affirming the trial court’s summary judgment. Compare Hughes v. Allenstein, 514 So.2d 858 (Ala.1987) (trial court did not state ground upon which it entered summary judgment, but appellate court affirmed where, on appeal, appellee presented valid basis for affirmance) with Blair v. Fullmer, 583 So.2d 1307 (Ala.1991) (declining to affirm summary judgment on ground not ruled upon by the trial court and not raised on appeal by appellee), and Alabama Real Estate Appraisers Bd. v. Walker, 739 So.2d 8 (Ala.Civ.App.1997), rev’d on other grounds, 739 So.2d 14 (Ala.1999) (ground for judgment disavowed by trial court and not argued on appeal will not be reached by appellate court).”

II.

In addition to granting the plaintiffs’ summary-judgment motion, the trial court provided that the Board defendants
“are permanently enjoined from further implementing and enforcing State Board of Education Policies 609.04 and 220.01 unless and until said policies are promulgated pursuant to thé Alabama Administrative Procedure Act, and are further permanently enjoined to refrain from interference with the flexible schedule *1060 arrangements previously approved and permitted for legislators by Postsecond-ary Education Department institutions and programs.”
The Board defendants contend that the second part of the trial court’s injunction— which permanently enjoins the Board from interfering “with the flexible schedule arrangements previously approved and permitted for legislators by Postsecondary Education Department institutions and programs” — is “facially overboard and fatally vague.” Specifically, the Board defendants contend that “[a]s written, the trial court’s injunction would prohibit any change to or modification of those ‘arrangements’ even if such changes or modifications were made in compliance with the AAPA.” They argue further:
“[I]t is not at all clear what the Board is being forced to allow under the permanent injunction, given that the old regime’s unwritten flex-time ‘arrangements’ for legislators were amorphous at best and totally ‘hands off at worst.... Alabama law is clear, however, that injunctions must be clear on what they demand of the parties. See Rule 65(d)(2), Ala. R. Civ. P. (a[n] injunction must be ‘specific in [its] terms’ and must describe the acts being compelled or proscribed ‘in reasonable detail’); see also, e.g., International Bhd. of Elec. Workers v. Morton, 365 So.2d 662, 664 (Ala.1978) (‘Since an injunctive order prohibits [or compels] conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed [or being compelled].’) (internal quotations omitted).”
(Board defendants’ brief, p. 69.)
The plaintiffs respond by asserting that “[t]he injunction, read most naturally, forbids non-compliance with the AAPA; if [the Board defendants] ever do comply with AAPA, then and only then will it be time to consider other challenges to whatever leave policies or rules [the Board defendants] adopt under the AAPA.”[12]
The sole ground on which the plaintiffs moved for a summary judgment and on which the trial court based its judgment is that the Board was required to, and did not, comply with the AAPA in adopting Policy 609.04 and Policy 220.01. Thus, the only ground on which the trial court could have relied in issuing its permanent injunction was its erroneous conclusion that the Board was required to comply with the AAPA in adopting the policies. Consequently, there is no valid basis upon which to affirm the trial court’s order permanently enjoining the Board defendants from enforcing or implementing the policies or from interfering “with the flexible schedule arrangements previously approved and permitted for legislators by Postsecondary Education Department institutions and programs.”

Conclusion

The judgment of the trial court is reversed, and the cause is remanded.
APPLICATION GRANTED IN PART AND DENIED IN PART; OPINION OF MAY 29, 2009, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
LYONS, WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
COBB, C.J., recuses herself.

. The two-year-college system was previously known as the "Alabama College System"; it has been renamed the "Alabama Community College System.”

. Policy 611.01, adopted in 1994, requires an employee seeking unpaid leave to obtain the consent of the president of the college at which the employee is employed and the consent of the chancellor of the Department of Postsecondary Education.

. Policy 220.01 defines an "elected state official” as "[a] person elected to a statewide office by a vote of the people and any member of the State Legislature. The term also includes any person appointed to any of these offices to fill a vacancy.”

. The plaintiffs are Representative Blaine Gal-liher; Representative Thomas Jackson; Representative Terry Spicer; Thomas D. Dermo-dy; Freddie Williams, Jr.; Senator. Linda Coleman; Representative Merika Coleman; and James P. Wrye. Former Representative Laura Hall was, but no longer is, a plaintiff.

. Byrne resigned as chancellor of the Department of Postsecondary Education effective May 28, 2009. Rule 43(b), Ala. R.App. P., states:
*1052 "When a public officer is a party to an appeal or other proceeding in the appellate court in that officer's official capacity, and during its pendency dies, resigns, or otherwise ceases to hold office, the action shall not abate and the public officer’s successor is automatically substituted as a party."
Rule 43(c), Ala. R.App. P., states: "An order of substitution may be entered at any time, but the omission to enter such order shall not affect the substitution."

. The members of the Board at the time the action was filed were Governor Bob Riley; Randy McKinney; Betty Peters; Stephanie W. Bell; Dr. Ethel H. Hall; Ella B. Bell; David F. Byers, Jr.; Sandra Ray; and Dr. Mary Jane Caylor.

. The Board defendants appealed to this Court challenging the preliminary injunction; that appeal was docketed in this Court as case no. 1070979. Upon the record being certified as complete in that appeal, however, the parties jointly moved this Court to remand the case for the trial court to enter a final judgment on the merits. On August 8, 2008, this Court remanded the case to the trial court, and the appeal in case no. 1070979 was stayed. This Court received notice on December 22, 2008, of the entry of a final judgment by the trial court, and on December 28, 2008, the appeal in case no. 1070979 was dismissed as moot.

. Citing Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692 (Ala.2008), the plaintiffs contend that this Court should determine only whether the trial court exceeded its discretion in issuing the permanent injunction. In Classroomdirect.com, this Court recognized the general rule that " ‘ “[a] preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo."'" 992 So.2d at 700 (quoting Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala.2006)). However, the permanent injunction at issue in Class-roomdirect.com, which we reviewed to determine whether the trial court had exceeded its discretion, was based on at least two facts not present in this case. First, the trial court "considered ore tenus testimony at the hearing on the postjudgment motions filed by Classroom Direct.” 992 So.2d at 701. Second, the permanent injunction issued in Classroomdirect.com addressed claims alleging violations of the Lanham Trademark Act, 15 U.S.C. § 1051 et seq. ("the Lanham Act”). As this Court noted, "the federal courts apply an abuse-of-discretion standard of review, which this Court now refers to as whether the trial court has exceeded its discretion, to the entry of a permanent injunction in a case brought pursuant to the Lanham Act.” 992 So.2d at 701 (footnote omitted; citation omitted). Consequently, this Court reviewed the permanent injunction at issue in Classroomdi-rect.com to determine whether the trial court had exceeded its discretion.

. Section 41-22-5, Ala.Code 1975, provides, in part:
"(a) Prior to the adoption, amendment, or repeal of any rule, the agency shall:
"(1) Give at least 35 days' notice of its intended action. Date of publication in the Alabama Administrative Monthly shall constitute the date of notice. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, shall specify a notice period ending not less than 35 days or more than 90 days from the date of the notice, during which period interested persons may present their views thereon, and shall specify the place where, and the manner in which[,] interested persons may present their views thereon. The notice shall be given to the chairman of the legislative committee, as provided in Section 41-22-23, and mailed to all persons who pay the cost of such mailing and who have made timely request of the agency for advance notice of its rulemak-ing proceedings and shall be published, prior to any action thereon, in the Alabama Administrative Monthly. A complete copy of the proposed rule shall be filed with the secretary of the agency and the Legislative Reference Service.
"(2) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing. The agency shall consider fully all written and oral submissions respecting the proposed rule. Upon adoption of a rule, the agency, if conflicting views are submitted on the proposed rule, shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling any considerations urged against its adoption.
"(b) Notwithstanding any other provision of this chapter to the contrary, if an agency *1054 finds that an immediate danger to the public health, safety, or welfare requires adoption of a rule upon fewer than 35 days’ notice or that action is required by or to comply with a federal statute or regulation which requires adoption of a rule upon fewer than 35 days’ notice and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule shall become effective immediately, unless otherwise stated therein, upon the filing of the rule and a copy of the written statement of the reasons therefor with the Legislative Reference Service and the secretary of the agency. The rule may be effective for a period of not longer than 120 days and shall not be renewable....
"(c) It is the intent of this section to establish basic minimum procedural requirements for the adoption, amendment, or repeal of administrative rules. Except for emergency rules which are provided for in subsection (b) of this section, the provisions of this section are applicable to the exercise of any rulemaking authority conferred by any statute, but nothing in this section repeals or diminishes additional requirements imposed by law or diminishes or repeals any summary power granted by law to the state or any agency thereof.
"(d) ... A proceeding to contest any rule on the ground of noncompliance with the procedural requirements of this section must be commenced within two. years from the effective date of the rule; provided, however, that a proceeding to contest a rule based on failure to provide notice as herein required may be commenced at any time.”

. In the trial court, the Board defendants contended that the Board had "substantially complied” with the AAPA in adopting the policies. However, the Board defendants have abandoned that argument on appeal.

. The Board defendants assert that Wood is the only reported decision concerning whether personnel or employment policies are "rules” subject to the AAPA. The plaintiffs do not dispute that assertion.

. The plaintiffs also note that the Board defendants "can ask the trial court for specific guidance” regarding compliance with the injunction.